357 P.2d 374

**Margaret McMAHON, Plaintiff-Respondent,**

**v.**

**B. AUGER, Administrator of the estate of Jack Wilks, deceased, Defendant-Appellant,**

**and**

**The State of Idaho, Defendant.**

No. 8874.

Supreme Court of Idaho.

Nov. 29, 1960.

Paul W. Hyatt, Lewiston, B. Auger, Grangeville, for appellant.

Cox, Ware, Stellmon & O'Connell, Lewiston, Wm. J. Dee, Grangeville, for respondent.

KNUDSON, Justice.

Respondent Margaret McMahon commenced this action seeking specific performance of an alleged oral agreement made by Jack Wilks (hereinafter referred to as Wilks) to devise certain farm land in Idaho County to respondent. Appellant not having offered any evidence the proof submitted by respondent is undisputed. Briefly the facts are that respondent, at an early age, was placed in the custody of her aunt Sarah Ellen Yates, who was the then owner of the ranch in issue; Sarah Ellen Yates died in 1909 and upon her death her son, Joe Yates (hereinafter referred to as Yates) inherited the ranch and was also appointed respondent's guardian; that during 1914 Wilks, a bachelor (being unrelated to either Yates or respondent) took up residence with Yates, a bachelor, and respondent on said ranch; respondent remained on the ranch until she married in 1915 when she moved away; respondent thereafter returned to the ranch from time to time to aid and assist the said Yates and Wilks; that in 1942 Yates became ill and respondent returned to the ranch and cared for him until his recovery; in 1943 Yates suffered a severe stroke and respondent returned to care for him and remained at the ranch attending and assisting Yates and Wilks from August 1944 until February 1947. Yates died December 8, 1947, leaving a will under the terms of which Wilks was designated executor and as sole devisee he succeeded to the title of the ranch involved. Upon the death of Yates respondent returned to the ranch and remained there until February 25, 1948.

It is alleged in the complaint that on or about February 10, 1948, respondent stated to Wilks that she intended to file a claim against the estate of Yates (time for filing claims against the estate not having expired) for the work and services she had rendered through the years at the request of Yates and pursuant to his agreement thereto; that Wilks then stated that the ranch belonged to both respondent and himself; that it was as much her home as it was his and that it would be hers when he was through with it; that the said Wilks requested respondent not to file a claim against the Yates' estate and stated that she would get more later by not doing so; that the said Wilks further stated that if respondent did not put in her claim and would "stay by him" that he would make a will devising the ranch to her; that he felt "that is the way Joe [Yates] wanted it to be"; that in pursuance and performance of such contract respondent abandoned her intention to file such claim; that respondent returned to the ranch each year staying from one to four months aiding and assisting Wilks on and about the ranch and advising him in business and personal matters and "staying by" him until his death; that respondent fully performed all the terms of said contract and the said Wilks

failed to perform; that Wilks died intestate on July 30, 1954 and without known legal heirs; that the State of Idaho has been made a party by reason of I.C. Title 14, Ch. 2. The State has not filed any appearance in this action.

The appellant B. Auger, administrator of the estate of Jack Wilks, deceased, filed a general demurrer and an answer denying the material allegations of respondent's complaint. Said appellant also pleaded five affirmative defenses which, briefly stated, are that if the alleged agreement between respondent and Wilks was ever made (1) it was not supported by any valuable, adequate or sufficient consideration, (2) it was a special promise to answer for the debt and default of another, (3) it was a special promise by Wilks, as executor, to answer in damages or to pay a debt of another, (4) it was an agreement purporting to create an estate or interest in real property which was not in writing or subscribed by Wilks or his lawful agent, and (5) if intended as a will it was not reduced to writing in conformity with the laws of the State of Idaho.

The case was tried to the court sitting without a jury and from a judgment in favor of respondent this appeal is taken.

Appellant specifies 14 assignments of error, 11 of which relate to the insufficiency of the evidence to sustain the findings of the trial court.

Assignment No. 14 claims error in overruling appellant's demurrer to the complaint and the remaining two assignments claim error in not finding for appellant.

The only ground stated in the demurrer is "that said complaint does not state facts sufficient to constitute a cause of action against the defendant". After examining the complaint we are convinced that no error was committed in overruling the demurrer.

For the purpose of obtaining a clear understanding of the facts which the trial court had to consider we deem it proper to mention that a substantial amount of uncontradicted pertinent evidence was introduced disclosing the extent and nature of the services rendered Yates by respondent and it is convincing that respondent devoted many days to the care, comfort and well being of Mr. Yates. After respondent's marriage (1915) seldom, if ever, did a year pass but that she returned to the ranch where she remained for periods of from one to three months on each trip, during which periods respondent performed, among other things, the cooking and washing, also cleaned the house and on occasions worked in the fields. During the last several years of his life Yates suffered periods of illness, some of which lasted for months, rendering him helpless to the extent that he could neither feed nor otherwise care for himself. The ranch home at that time was not provided with modern and desired facilities which would

aid in the maintenance of cleanliness and sanitation about the premises. Consequently during periods of his helplessness respondent's endeavors to nurse and care for him were rendered unusually difficult. However. notwithstanding such difficulties respondent steadfastly and affectionately administered to his care, comfort and needs. One of such periods lasted from August 1944 to February 1946.

Respondent relies for the most part upon testimony of four witnesses as establishing the alleged agreement. Walter McAdams, being one of such witnesses, testified that he had known respondent and Yates since 1913 and became acquainted with Wilks in 1915. Said witness testified to a conversation which took place at the home of Wilks shortly after the death of Yates during which McAdams and his wife, respondent, Wilks and Howard Swatman (now deceased) were present. Said witness stated that on said occasion he had gone to see Wilks as the executor of the Yates estate to discuss a claim for money which he had against the said estate. The following are excerpts of Mr. McAdams' testimony:

"Q. All right. Now, you say you had some conversation with Jack Wilks about your claim against Joe Yates' estate? A. Yes.

"Q. Was Margaret McMahon present at that conversation? A. Yes, she spoke up.

"Q. What did she say? A. She spoke up and said she would put in for a settlement too.

"Q. Did she say anything about what her claim was for? A. Yes, sir.

"Q. What did she say? A. Her services for all those years she had taken care of Joe.

"Q. What, if anything, did Jack Wilks say when Margaret McMahon made that statement? A. He told me he would take care of my bill himself, and he also told Margaret if she would not put in a bill, she was going to get the place; that it was her place anyhow; that was Joe Yates' wish.

"Q. What, if anything, further was said by Jack Wilks to Margaret McMahon? A. He told Margaret McMahon if she would stay by him he would stay by her and make a will in her favor; the ranch was as much hers as his and she would have it all."

The following are excerpts of the testimony of Ruth McAdams relating to the same conversation referred to by Mr. McAdams, above quoted:

"Q. Now, following that conversation between your husband and Jack Wilks, was there any conversation between Margaret McMahon and Jack Wilks in your presence and in the

presence of your husband and Mr. Swatman? A. Yes, sir.

"Q. Go ahead and state, as you recall, the conversation or statement that Margaret McMahon made to Jack Wilks, if any. A. Mr. McAdams said he wanted to put in his claim against the estate. Margaret McMahon spoke up and said, 'Jack, how about me putting in my claim?' and Jack said, 'It's not necessary. This is your ranch as much as mine. That's the way Joe wants it. When I am gone, it's yours'. And that's the conversation that went on.

"Q. Did Jack Wilks say anything about what he would do, how he would transfer that property to her? A. Yes, he said, 'The ranch was yours, Margaret'. He said, 'It's always been your home and always will be your home'.

"Q. Did Margaret McMahon say anything further then? A. She said, 'Well, Jack, if that's the way it is going to be, if that's what you are going to do, if that's your wish, I withdraw my claim.' "

Grace Yates, a sister-in-law of Joe Yates, while testifying regarding a conversation she had with Jack Wilks during a dinner at her home after the death of Joe Yates, made answer as follows:

"Q. Go ahead and relate the conversation between yourself and Jack Wilks. A. Well, Jack told me that Marguerite wanted him to pay her for her nursing Joe and that's when their contract was made, that if Marguerite would not charge Jack anything for nursing Joe that he would give her the ranch.

"Q. Was there anything else said at that time that you recall? A. Well, Jack talked. He repeated everything he said and I didn't pay much attention to him because he repeated everything he said.

"Q. What did he say that he repeated? A. He told me that Marguerite would get the ranch after he was through with it."

The following are excerpts of the testimony of E. J. Goda who was of the age of 64 years and had known Jack Wilks since 1914. Said witness while referring to a conversation had with Jack Wilks about the last of July, 1950 stated as follows:

"Q. Go ahead and relate the conversation. A. My mother asked Jack if [s]he had heard from Marguerite lately and he said he had and he talked a little and he said Marguerite said she wanted Jack to pay for taking care of Joe when he was sick and he said if she didn't put in her bill she would get all of the ranch and everything on it, and they agreed to that.

"Q. Was there any further conversation that you recall on the occasion

of that dinner relative to what was agreed upon? A. He said they agreed that was what it was to be, she would get the place and everything on it; that's what Joe wanted."

Appellant cites numerous cases from this and other jurisdictions wherein it is held that in order for an oral contract, such as is here involved, to be specifically enforced, it must be established by clear, convincing and satisfactory evidence and must be complete, definite and certain. Such rule has long been followed in this state; however, this Court has stated that while a contract to leave by will must be proved by clear and satisfactory evidence, especially when the contract is oral, this does not mean that the proof must be so clear as to exclude any controversy over the evidence. White v. Smith, 43 Idaho 354, 253 P. 849. The proof required must be not so much to the terms of the contract as to the intent of the testator since there can be no devise either actual or by construction of equity if there is no intent. It is not necessary that the agreement be expressed with technical legal precision in phraseology; it being sufficient that the parties use such language as to make their purpose clear. This Court is also committed to the rule stated in Bedal v. Johnson, 37 Idaho 359, 218 P. 641, 645, as follows:

"The rule, as we understand it, is that while it is a prerequisite to the specific enforcement of such a contract that both its existence and its terms be proved by clear and convincing evidence, the clearness and convincing force of the evidence is a question primarily for the trial court, and if the trial court finds on substantial evidence, or on conflicting evidence, that the contract was made and is definite and certain, such finding of fact will not be disturbed on appeal."

See also, Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Jones v. Adams, 67 Idaho 402, 182 P.2d 963; Andrews v. Aikens, 44 Idaho 797, 260 P. 423, 69 A.L.R. 8.

In the instant case we are called upon to decide if the trial court's finding that a contract was entered into between the deceased, Wilks, and respondent is based upon substantial evidence. Testimony of the two disinterested witnesses, Mr. and Mrs. McAdams, that they heard the conversation between Wilks and respondent relative to the agreement here sought to be enforced is undisputed. The only reasonable interpretation that can be placed upon the language used by Wilks on the occasion mentioned in that testimony is that he, Wilks, wanted respondent to understand that he recognized that respondent had an interest in the ranch and that if she would stay by him and not file a claim against the Yates estate he would, upon his death, leave a will devising the entire ranch to her. Obviously it was so understood by respond-

ent and she promptly made known her willingness to become a party to such an agreement by replying to Mr. Wilks that if that was the way it was going to be done she would withdraw her claim.

The uncontradicted evidence discloses that during the years that followed, Jack Wilks on several occasions, acknowledged that he had an agreement with respondent that she was to get the ranch upon his death. In July, 1950, Wilks stated in the presence of Grace Yates (sister-in-law of Joe Yates) that he, Wilks, had agreed with respondent that if she would not put in a bill for taking care of Joe Yates, he (Wilks) would give respondent the ranch after he was through with it. E. J. Goda testified that Wilks made the same statement in his presence. James L. McHugh testified that he had a conversation with Wilks about April 1, 1953, at which time Wilks stated that his health was not too good; that he wanted to get the ranch in good shape and that he was going to leave it to respondent. Ray Zumwalt testified regarding two conversations he had with Wilks, one during the latter part of May, 1953, and again during April, 1954, and on each occasion Wilks stated in substance that upon his death he was going to leave everything to respondent. Said witness also testified that he was at the home of Wilks the day that Wilks was taken to the hospital during his last illness at which time and place Wilks said to him "get some witnesses and a law-yer so he could fix his will up." We conclude that the evidence is adequate to support the trial court's finding that the contract was entered into by Wilks and respondent.

Appellant contends that as concerns the Yates estate respondent waived a money claim only and any services she rendered Wilks were compensable in money, therefore respondent is not entitled to equitable relief by specific performance of the contract. The trial court found that the services rendered by respondent to both Yates and Wilks were personal in nature and not readily measurable or compensable in terms of money. The record discloses that in addition to the physical labor which respondent performed about the ranch for the benefit of both Yates and Wilks, respondent rendered Yates services of a very personal nature in nursing and caring for his enfeebled body during many months of illness and that she administered to his needs with love and affection such as she might show to her own father. The evidence is sufficient to sustain said finding of the trial court.

However we do not consider the fact that the value of respondent's services may have been ascertainable in money to be the controlling factor. The real question is whether a resort to equity powers is necessary to give proper and adequate relief or to prevent the perpetration of fraud upon

respondent, the performing party. Ashbauth v. Davis, 71 Idaho 150, 227 P.2d 954, 32 A.L.R.2d 361; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Erwin v. Mark, 105 Mont. 361, 73 P.2d 537, 113 A.L.R. 1064; Oles v. Wilson, 57 Colo. 246, 141 P. 489. In the instant case whatever may have been the understanding, if any, between Yates and respondent as to how or in what manner, if any, she was to be compensated for her services to him, the undisputed fact is that shortly following the death of Yates, respondent was led to believe that if she did not file a claim against the Yates estate and survived Wilks, the ranch in its entirety would become hers. Confidently believing the words of Wilks to that effect, respondent continued to perform physical and mental services for Wilks at intermittent periods of time during the six years succeeding the death of Mr. Yates. On February 10, 1948, Wilks told respondent that the ranch was as much hers as it was his and that Joe Yates wanted it that way. What may have been the understanding between Joe Yates and Jack Wilks as concerns respondent is not disclosed other than the foregoing mentioned statement of Wilks in this respect. If there was no truth in the statement it must have been made to deceive respondent and if the statement were true, would respondent's remedy, as suggested by appellant, be adequate? We think not. In the case of Anderson v. Whipple, supra,

this Court stated [71 Idaho 112, 227 P.2d 360]:

"Another underlying principle, applicable where the contract does not comply with the statute of frauds, is that equity will not enforce it except in cases where a refusal to do so would be inequitable. Conversely, where a party has so performed, or changed his position in reliance on the contract, that to allow the other party to interpose the statute of frauds as a defense, would perpetrate a fraud on the performing party, and the legal remedy is inadequate, equity will decree specific performance."

In considering the issue of part performance attention is called to I.C. § 9–503 which prescribes a rule of evidence requiring an agreement to convey real property, such as is here involved, to be in writing. However, I.C. § 9–504 provides that said § 9–503 must not be construed to abridge the power of the court to compel the specific performance of an agreement in case of part performance thereof. This Court has repeatedly said that an oral contract for the conveyance of real property will be enforced and is binding upon the parties thereto, and is not within the statute of frauds when there is partial or complete performance of the same. Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946; Wood v. Hill, 70 Idaho

93, 212 P.2d 391; Jones v. Adams, 67 Idaho 402, 182 P.2d 963; White v. Smith, supra.

The record discloses that respondent did not file a claim against the estate of Joe Yates; that during the six years intervening the deaths of Yates and Wilks respondent continued to devote some time to the welfare of Mr. Wilks; that Wilks, in the presence of several witnesses, expressed gratitude for respondent's good help and companionship; he stated that "she was a lot of help" and "gave him reassurance of things"; that as late as April, 1954, he mentioned "how good she was coming up and taking care of his place and cleaning it up". Such evidence supports the contention that respondent fully performed her part of the agreement. There is no intimation in the evidence that respondent failed to perform in any particular.

■ Appellant contends that the claimed agreement between Wilks and respondent was not supported by a valid and adequate consideration. It is undisputed that respondent forbore the right to file a claim against the estate of Joe Yates and that she also devoted at least some time in cleaning his (Wilks) home and providing him companionship. The waiver of a right or forbearance to exercise the same is a sufficient consideration for a contract, whether the right be legal or equitable, or exists against the promisor or a third person, provided it is not utterly ground-

less. 17 C.J.S. Contracts § 103, p. 456; Heath v. Potlatch Lumber Co., 18 Idaho 42, 108 P. 343, 27 L.R.A.,N.S., 707; Ticknor v. McGinnis, 33 Idaho 308, 193 P. 850; Moran v. Copeman, 55 Idaho 785, 47 P.2d 920.

■ Appellant contends that even if respondent had a valid claim against the Yates estate, the amount she could recover under such claim would not have exceeded one-fifth of the value of the ranch. Such contention is beside the point involved. Just what value the respective parties placed upon respondent's asserted claim is not disclosed by the record. The general rule as to the sufficiency of consideration to support a contract for testamentary disposition of property is stated in 94 C.J.S. Wills § 113(1), p. 866, as follows:

"In accordance with the rule applicable to contracts generally, a contract to make a will must be supported by a sufficient valid consideration, except, possibly, where it is a contract under seal. The law permits a wide latitude in determining what shall constitute sufficient consideration for a contract to devise. A sufficient consideration may consist of a benefit to the promisor, or a detriment to the promisee, or both, but it must fall within at least one of these classes. It must have some value in the eyes of the law; but in the absence of fraud or overreach-

ing, the promisor, if competent, can fix on anything not in itself unlawful as a consideration and put his own value on it, and whether it is equivalent to the promise to leave the property in that respect is for the determination of the parties at the time they make the bargain."

In Alexander v. Lewes, 104 Wash. 32, 175 P. 572, 576, the court had under consideration a contention by one of the parties that to grant specific performance of the agreement would be inequitable, in that too much would be granted for too little in return; that the value of the property would be disproportionate to any services that could be rendered, and the court said:

"In other words, in the absence of fraud or overreaching, the testator being competent can fix upon anything that is not in itself unlawful as a consideration and put his own value upon it, whether it be greater or less. This is so in this class of cases even in greater degree than in ordinary cases, for the courts have rarely, if ever, undertaken to fix the value of a consideration sounding in personal service. They have recognized the futility, if not the impossibility, of measuring in dollars and cents love, affection, care, service, and attention to the aged or infirm."

In the instant case Wilks was in a position to know the merit or demerit of respondent's claim and to judge the necessity or advisability of obtaining a settlement regarding it.

The record does not disclose in detail the extent or value of respondent's services to Wilks subsequent to the death of Mr. Yates, however it does disclose that he (Wilks) during said period, repeatedly acknowledged to disinterested witnesses that respondent was to get the ranch upon his death. There is no evidence of a desire on the part of Wilks to repudiate any agreement he had with respondent, but on the contrary the evidence shows that the making of a will was a matter of concern to Wilks during his last illness.

Appellant also contends that respondent stood in a family relationship to Yates and that it should be presumed that her services to Yates were rendered gratuitously. By the term "family relationship" as used in this connection is meant "a collective body of persons who form one household under one head and one domestic government, and who have reciprocal, natural and moral duties to support and care for one another". Hartley v. Bohrer, 52 Idaho 72, 11 P.2d 616, 617. Respondent was a niece of Yates and had maintained a home of her own since she was married in 1915. This Court in Hartley v. Bohrer, supra, said:

"When parties do not live together in the family relationship, however, the

presumption of the gratuitous nature of the services ceases to exist, or is greatly weakened, according to the proximity of the relationship and the nature of the services performed. In such event, where the relationship is more remote than a close kinship by blood, such as that of parent and child, something more than the relationship itself must be shown in order to overcome the primary implication that a person who accepts valuable services does so on the understanding that they are to be paid for. 28 R.C.L. 683, § 17. If the family relationship does not exist, the existence of a remote kinship by blood or marriage will not of itself avail to raise the presumption."

The evidence in this case does not justify a presumption that respondent's services to Yates were to be rendered without compensation or reward.

Appellant refers to the cases of Andrews v. Aikens, supra, and Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769, as sustaining his contentions in this case. The law as stated in said cases is correct, but the facts involved are substantially different than the facts here under consideration. In Andrews v. Aikens services of a filial and intimate personal nature were not involved. In fact the agreement did not even require respondent to render aid or assistance in case of sickness. In this regard the Court said [44 Idaho 797, 260 P. 425]:

"This was not a contract for the personal care of an aged person, where great patience with his infirmities was required, contemplating not only food, medicine and clothing, but good temper, forbearance, and honest effort to please and an intimate family relationship; but was simply a business arrangement for the management and care of the property of the deceased."

In that case the testator, during his lifetime, conveyed the property involved to another.

In Johnson v. Flatness, supra, the Court found that the admissible competent evidence, when considered in the light most favorable to respondent, did not establish that the deceased ever contracted to make a will or that there was ever any consideration for such an agreement.

In the instant case there are no innocent heirs or next of kin who will be affected by the specific performance of the agreement involved. There is no evidence in the record contrary to the fact that an oral agreement had been made. The deceased (Wilks) had a right to dispose of his property as he pleased. While it may be possible to draw another conclusion from the evidence it was convincing to the trial court, who saw and heard the witnesses, that the decedent

Wilks agreed to leave the real estate involved to respondent and we cannot say that the court erred.

The judgment of the trial court is affirmed with costs to respondent.

TAYLOR, C. J., SMITH and McFADDEN, JJ., and SPEAR, District Judge, concur.