480 P.2d 896

Rodney W. TEW and Noma C. Tew, husband and wife, Plaintiffs-Appellants,

v.

Elwood MANWARING, Defendant-Respondent.

No. 10543.

Supreme Court of Idaho.

Feb. 9, 1971.

Rigby & Thatcher, Rexburg, for plaintiffs-appellants.

Furchner & Anderson, Blackfoot, for defendant-respondent.

SPEAR, Justice.

This action arises out of an alleged breach by Elwood Manwaring, respondent, of a contract to purchase a house from Robert and Noma Tew, appellants. From a finding by the district court that no bind-

ing contract existed, Mr. and Mrs. Tew have appealed to this court.

On November 7, 1963, the Tews, Manwaring, and Mr. and Mrs. Elwin Loveland entered into a written real estate exchange contract drawn by Manwaring, as the real estate broker, under which the Lovelands would purchase the Tews' home and sell to the Tews their home, and Manwaring would then purchase the Loveland home from the Tews for cash. In the contract it was agreed that the value of the Tew home was $17,800, and the value of the Loveland home was $15,000. Since there was a mortgage of $11,000 against the Loveland home and no mortgage against the Tew home, the Lovelands agreed to take out a loan and pay appellants $13,800 in cash plus the deed to the mortgaged Loveland home in exchange for the Tew home. The exchange of deeds was subsequently accomplished with the Lovelands taking out a "Conventional Loan" on the Tew property and paying Tews $13,800 in cash. Tews then became the owners of the Loveland home on Clifford Street. Although Mrs. Tew's signature on the contract was never acknowledged, her signature on the deed conveying the Tew property to the Lovelands was acknowledged.

In the contract, following the signatures of the Lovelands, the Tews and Manwaring, the following language appears typed upon the printed form in a portion of the form designed to provide for the broker's commission:

"Broker agrees to purchase home on Clifford St. [Loveland home] for $14,-000 net from Rodney Tew after loan is made at no expense to Rodney Tew."

Following the above set out clause were the signatures of the Lovelands and the Tews.

The aforementioned clause is the basis of this action. The parties agree that the "home on Clifford St." refers to the home previously owned by the Lovelands, but they disagree upon the meaning of the words "after loan is made." Tews claim that the loan referred to was the "Conven-

tional Loan" mentioned earlier in the contract which Lovelands agreed to secure to purchase the Tew property from the Tews. Manwaring contends that the loan referred to was a loan on the Loveland home to be secured by himself or a buyer he located, and that his contract to purchase was conditional upon the securing of such a loan.

After the signing of the contract between the Tews and the Lovelands, but before the execution and exchange of deeds to the respective properties, Mr. Manwaring requested appellants to obtain a loan on the Loveland property. Mr. Tew applied for a loan on the property which he described in his application as a non-occupant owner loan, with the hope that he could obtain a loan of $14,000 on the property which would give him $3000 in cash (there being an $11,000 mortgage on the premises), and Manwaring then could assume the obligation of paying back the loan. When Tew found that the maximum loan he could obtain without living in the house was $12,000, he abandoned the non-occupant loan idea. Subsequently, the Tews initiated an action in the district court against Manwaring for an alleged breach of contract to purchase the Loveland property seeking damages in the amount of $3000. The court held that the terms of the contract between the parties had never been agreed upon, and since there was no meeting of the minds of the parties, no contract existed between them. From that decision, this appeal has been perfected.

Since 1964, when Lovelands deeded their property to the Tews, Manwaring has repaired and leased the property and made mortgage payments. The trial court found that he was acting as a trustee for Tews in performing such actions.

The errors assigned may be reduced to two main contentions: first, that a binding contractual agreement was entered into by the parties, the second, that Manwaring was estopped to deny the validity of the contract prepared by him.

This court agrees with the appellants' first contention that the trial court erred in

finding that there was no agreement between the parties sufficient to establish a contract and thus no binding contractual agreement existed between them. A single contract existed between the Tews and Mr. Manwaring which provided that when the Tews exchanged their home for the Loveland's Mr. Manwaring would buy the Clifford Street home from the Tews, providing them with $3000 cash. The record reveals that both parties, appellants and respondent, acted as if there was a contract and indeed both respondent's and appellants' testimony at trial indicates that respondent reaffirmed the contract several times after it was actually signed. Evidence of the terms of the agreement and the actions of the parties themselves adequately describe the agreement that existed between the parties.

■ It is true that some of the terms of the contract, such as which loan was referred to in the clause typed in by the broker where he agreed to buy the Clifford Street property, are oral and this appended clause has not been subscribed by Elwood Manwaring, the party sought to be charged. Clearly the contract as finally prepared does not satisfy the statute of frauds as relating to real estate sales, I.C. §§ 9-503, 9-505(5). However, the action of the Tews in conveying their home to the Lovelands constituted a performance of their part of the contract with Mr. Manwaring. Where there has been full or partial performance of a contract normally within the statute of frauds, such a contract is nonetheless valid where the remedy sought is specific performance. I.C. § 9-504; Quayle v. Mackert, 92 Idaho 563, 447 P.2d 679 (1968); McMahon v. Auger, 83 Idaho 27, 357 P.2d 374 (1960); Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946 (1950).

Although an agreement existed pursuant to which the appellants have fully performed all that was required of them, to avoid the mandate of the statute of frauds in this case the Tews must, by the terms of I.C. § 9-504 and the above cited authority, seek specific performance. In their brief to this court, appellants conclude their argument by alleging that they are entitled to judgment against Mr. Manwaring in the amount of $3000. The second amended complaint also recites a demand for judgment for $3000 but also tenders the deed to the Clifford Street property to the court. Nowhere is there literally a prayer for specific performance. However, this is not fatal to the appellants' case. I.R.C.P. 8(f) states that all pleadings shall be so construed as to do substantial justice. Mindful of this standard of liberal construction of the pleadings, we must conclude that a demand for damages in the amount of the contract purchase price coupled with a tender of the deed to the court is substantially equivalent to a plea for specific performance. The statute of frauds imposes no obstacle to the enforcement of this contract.

Due to lack of agreement on some of the essential terms of the contract, the district court concluded that no binding contract had been formed. Primary among the terms about which there is disagreement is the meaning of the term " * * * after loan is made at no expense to Rodney Tew." Respondent contends that this refers to a loan which he would attempt to get on the property. Appellants, however, believe that the clause refers to the loan which the Lovelands obtained to accomplish the purchase of the Tews' house. The district court found that the evidence supported either view, which finding formed the basis for the fatal ambiguity. Since the court below found that evidence supported either understanding of which loan was intended, this court is free to substitute its interpretation to the exclusion of the other, thus the well known rule that a finding based upon conflicting evidence will not be disturbed on appeal does not apply.

■ Granting that the testimony is conflicting and is no better evidence, standing alone, for one side than the other, yet the district court should have resolved the con-

flict in favor of the appellants. Both appellants and respondent testified that Mr. Manwaring prepared the written contract with the clause in which he agreed to buy the property on Clifford Street. It is well settled in this state and in the law of contracts generally that where there is doubt as to the meaning of the written terms of a contract, such doubt is resolved against the party who drew it. Big Butte Ranch, Inc. v. Grasmick Produce Co., 91 Idaho 6, 415 P.2d 48 (1966); Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976 (1948); Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844 (1942). For this reason we find that the loan referred to in the contract was the loan to be procured by the Lovelands toward their purchase of the Tew home.

Respondent argues that the evidence of the Tews having applied for a loan after the contract was signed but before the closing with the Lovelands proves that the Tews never relied on the loan term as they now interpret it and at that time recognized that the loan was to be secured on the Clifford Street home by either Mr. Manwaring or a third party. We believe this argument to be without merit. Respondent testified that the Tews' loan application was at his request and after he had communicated to them that there might be some difficulty in performing the contract already formed. There is no reason to suppose other than that the Tews were attempting to secure an amicable solution to a problem that surfaced after the agreement was made. Nor does the fact that the Tews went ahead with the closing after their loan application was refused jeopardize their position. They had signed a contract with the Lovelands with no conditions on their performance and would have been exposed to litigation themselves had they not performed.

■ Respondent also argues that the contract is void since it was not acknowledged by the wife as required by I.C. § 32–912. While it is true that a contract to convey the community real estate is void if not signed and acknowledged by both the husband and wife under this statute, this is not an inexorable rule and does not defeat the contract between the Tews and Mr. Manwaring. First, this statute was enacted for the purpose of protecting the community and cannot be invoked to gain advantage over the community especially where the plaintiffs have fully performed. Mitchell v. Atwood, 55 Idaho 772, 47 P.2d 680 (1935); Quayle v. Stone, 43 Idaho 306, 251 P. 630 (1926); Farrar v. Parrish, 42 Idaho 451, 245 P. 934 (1926); See also West v. Brenner, 88 Idaho 44, 53, 396 P.2d 115 (1964); Finlayson v. Waller, 64 Idaho 618, 134 P.2d 1069 (1943).

■ Further, respondent's actions, especially subsequent to the formation of the contract, are clearly such that he should be estopped to deny that a contract existed or assert that it is invalid for want of acknowledgment by the wife. This court has several times enumerated the essential elements of equitable estoppel.

"* * * as related to the party estopped [they] are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially."

Dalton Highway District of Kootenai County v. Sowder, 88 Idaho 556, 401 P.2d 813 (1965); Boesiger v. Freer, 85 Idaho 551, 381 P.2d 802 (1963); Swanson v. State, 83 Idaho 126, 358 P.2d 387 (1960); Carpentier v. Welch, 74 Idaho 242, 259 P.

2d 814 (1953). The record discloses several instances where the respondent assured the appellants of his intent to perform the contract and requests for them to trust him. There is little doubt that this conveyed the idea that Mr. Manwaring recognized the contract to be valid and intended to perform. Further, the Tews relied upon such statements in continuing with the transaction to their considerable disadvantage. Aside from the fact that they entered into the contract as a result of Mr. Manwaring's assurances, after the contract was signed but before closing, the Tews, had it not been for respondent several times reaffirming the contract, could have attempted to effect a rescission with the Lovelands.

Mr. Manwaring's intent or expectation that the Tews would rely on his assurance seem obvious from the circumstances. From respondent's conduct, we conclude that he entertained no intent other than that he would not perform the contract except in the manner most advantageous to him. Had the Tews known of respondent's intent regarding the contract, their own actions could have been different as above discussed. All the elements of equitable estoppel are shown in this case and we hold respondent is estopped to deny the existence of a valid contract.

Even if it were assumed that respondent could theoretically avoid the contract here by invoking the provisions of I.C. § 32–912[1], still we do not believe that the circumstances are such that it could be done in this case. Even if respondent had a legal right to question the validity of the contract because Mrs. Tew's signature was not acknowledged, by his later conduct which was consistent with the existence of a valid contract, he waived his right to challenge it on that basis.

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his *legal right in opposition* to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim." (emphasis ours)

Swain v. Seamens, 9 Wall. (U.S.) 254, 19 L.Ed. 554 (1869); White v. Ralph, 66 Idaho 38, 154 P.2d 167 (1944); Leaf v. Reynolds, 34 Idaho 643, 203 P. 458 (1921).

The judgment of the district court is reversed and the cause remanded for further proceedings consonant herewith. Costs to appellants.

McQUADE, C. J., and McFADDEN,. DONALDSON and SHEPARD, JJ., concur.

---

1. "32–912. Husband's control of community property.—The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: provided, that the husband or wife may, by express power of attorney, give to the other the complete power to sell, convey or encumber said community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."·