658 P.2d 972

George CALVIN, Plaintiff-Appellant,

v.

SALMON RIVER SHEEP RANCH, a partnership and W. Fawn Rupp and Rosa Rupp, husband and wife, and Jim E. Rupp and Ilene V. Rupp, husband and wife, individually and as partners of Salmon River Sheep Ranch, and J.B. Lumber Co., a corporation, Defendants-Respondents.

No. 13841.

Supreme Court of Idaho.

Feb. 10, 1983.

302

W.C. MacGregor, Jr., Grangeville, for plaintiff-appellant.

Wynne M. Blake, Lewiston, and Michael E. McNichols, Orofino, for defendants-respondents.

HUNTLEY, Justice.

This is an appeal from an order granting a directed verdict for the defendants in an action on a timber purchase agreement. The basic issue before this Court is whether the trial court properly ruled that the plaintiff-appellant Calvin failed to introduce substantial competent evidence of such quantity and probative value that a reasonable jury could have found in his favor. The facts relevant to our inquiry in this case are as follows:

The property known as the Salmon River Sheep Ranch near Riggins, Idaho, was acquired by brothers Fawn and Jim Rupp pursuant to a contract dated December 28, 1976. Although both men were married at the time of purchase, only their names—and not the names of their wives—were listed as purchasers on the contract.

Fawn Rupp testified at trial that during 1978 the Salmon River Sheep Ranch was operated as a partnership composed of Fawn and Rosa Rupp, husband and wife, and Jim and Ilene Rupp, husband and wife. In the spring of 1978, plaintiff-appellant, George Calvin, contacted Fawn Rupp regarding the possibility of purchasing timber located on the ranch. Several meetings were subsequently held between Calvin and the Rupps. It is undisputed that although Ilene and Rosa Rupp were in attendance at some of these meetings, they did not take part in the negotiations.

The meetings between the parties culminated in a timber purchase agreement dated July 15, 1978. The agreement stated it was between "Salmon River Sheep Ranch, ... 'seller' and George R. Calvin ... 'buyer,'" and was signed by Calvin and Fawn Rupp. The agreement provided that the seller agreed "to sell all merchantable timber" on the land described and that the buyer agreed "to try to move" 750,000 board feet of timber during the two-year term of the contract. The agreement further provided that the purchase price of the timber was to be $60 per thousand board feet, to be paid on mill scale.

In June of 1978 Calvin went onto the land and commenced his logging operations pursuant to an alleged oral agreement. He hired a crew, obtained easements, built and

renovated logging roads and began logging. On June 19, 1978, Calvin entered into an agreement with J.B. Lumber Company to deliver logs cut on the ranch to its mill in Clarkston, Washington.

Calvin, or others at his direction, carried on the logging operations between June of 1978 and March 10, 1979, cutting and delivering approximately 800,000 board feet of logs. The logs were delivered to J.B. Lumber until February of 1979, at which time J.B. Lumber terminated its log delivery agreement with Calvin. Thereafter, the logs were delivered to Wickes Forest Industries in Grangeville, Idaho. Salmon River Sheep Ranch was paid for all logs cut and delivered according to the rate established in the agreement of July 15, 1978.

On March 10, 1979, Calvin was personally informed by Fawn and Jim Rupp that his agreement with the Salmon River Sheep Ranch was void and that therefore it was terminated. On the same day Calvin received a letter from the Rupps' attorney informing him that the agreement had involved the sale of community property and that since the agreement had not been signed and acknowledged by the wives of Fawn and Jim Rupp, it was void. The letter continued on to state: "You should not undertake to cut any more trees for if you do we will sue to recover treble damages for timber removed from and after the date of your receipt of this letter."

Calvin testified that as of March 10, 1979, he had cut and had down on the defendants' property 127,040 board feet of pine and 197,820 board feet of fir. He further testified that he discontinued his operations as of that date and the cut timber was left on the ranch property.

On May 3, 1979, Calvin filed his complaint in this case, naming Salmon River Sheep Ranch, the Rupps (individually and as partners of the Salmon River Sheep Ranch) and J.B. Lumber as defendants. Calvin sought specific performance of the July 15, 1978, agreement and damages, or, in the alterna-

tive, damages alone. He set forth several causes of action, including: breach of a valid contract by the partnership, estoppel against the Rupps to deny the validity of the partnership or the contract (contract by estoppel), conspiracy by the Rupps and J.B. Lumber, misrepresentation and fraud on the part of the Rupps, and unwarranted interference with the contract by J.B. Lumber. After the defendants' motion to dismiss the complaint was denied by the trial court, their answer was filed and the case was set for trial.

A jury trial was commenced and at the conclusion of the plaintiff's case, the defendants moved for a directed verdict. As stated in the judgment, the trial court considered the motion as alleging

"[T]hat said contract had not been signed or separately acknowledged by either of said wives, Rosa Rupp or Ilene V. Rupp; that the plaintiff had failed to prove that either wife had at any time engaged in any conversation with the plaintiff concerning the timber or the contract therefor, nor had they in any way misrepresented or misled the plaintiff concerning the timber or its ownership, and that the plaintiff had failed to prove that said wives had benefitted from said purported timber sale contract other than to the extent of deposits of money in payment therefor in an account of the partnership which defendants contended was of no benefit to defendants inasmuch as the timber was worth the price paid, that there was no showing of any act on the part of either wife which would in any way estop them from asserting invalidity of the contract in question."

The trial court found the defendants' allegations to be true and also found that since there was "no evidence of a valid contract," there was "no evidence of a conspiracy to interfere with such contract." Thus, the trial court concluded that *Fairchild v. Wiggins,* 85 Idaho 402, 380 P.2d 6 (1963),[1] was controlling, and directed a verdict in favor

---

1. In *Fairchild v. Wiggins,* 85 Idaho 402, 380 P.2d 6 (1963), the Court held that the wife of a seller of timber was not estopped from claiming the protection of I.C. § 32–912. *Fairchild* is discussed more fully in the text, *infra.*

of the defendants. The present appeal was perfected from the order granting the directed verdict.

■ The rules applicable to review of an order granting a directed verdict are well-established:[2]

"A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion.... On a motion for a directed verdict pursuant to I.R.C.P. 50(a), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn from it.... Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached from the evidence, the cause should be submitted to the jury." *Shields & Co. v. Green,* 100 Idaho 879, 882, 606 P.2d 983, 986 (1980) (citations omitted).

■ After reviewing the record in this case, we agree with the trial court that the record does not contain substantial competent evidence from which a jury could have found the existence of a conspiracy between the Rupps and J.B. Lumber. Similarly, no such evidence was produced from which a jury could have found that J.B. Lumber was guilty of unlawful interference with contract. Therefore, we hold that the trial court did not err in directing a verdict in favor of J.B. Lumber.

However, we cannot say the same thing as to the Rupps and the Salmon River Sheep Ranch. We find substantial competent evidence in the record which, when taken as true and when every legitimate inference is drawn in favor of Calvin, tends to establish Calvin's case at least with respect to some of his causes of action. Con-

sequently, we hold that the trial court erred in directing a verdict in favor of the Rupps and the Salmon River Sheep Ranch.

■ The primary issue on appeal is whether Rosa and Ilene Rupp are estopped from claiming the protection provided by I.C. § 32–912,[3] which provides in part:

"Either the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract, except that neither the husband nor wife may sell, convey or encumber the community real estate unless the other joins in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered ...."

The trial court concluded and the respondents contend that the question of estoppel in this case is controlled by this Court's decision in *Fairchild v. Wiggins,* 85 Idaho 402, 380 P.2d 6 (1963). We cannot agree.

In *Fairchild,* the wife of the seller was present during a portion of the conversations that occurred on one day and led to an agreement to sell timber the next day. Although the opinion does not disclose the amount of time which elapsed from the execution of the bill of sale until the Wiggins denied the validity of the contract, it does disclose that Fairchild was never allowed to go on the land and begin cutting timber. The Court found that there had been "no proof of any affirmative action on the part of the wife, no proof of false representation or concealment of material fact, and no proof of any material improvement on the real property." 85 Idaho at 406, 380 P.2d at 8. In addition, the Court noted, "Nowhere does it appear that Mrs. Wiggins made any affirmative representa-

---

**2.** The fact that the trial court included findings of fact in the judgment entered in this case does not modify our standard of review. If a motion for a directed verdict is granted and such findings are made, they are merely superfluous and the task of this Court remains the same. *Gmeiner v. Yacte,* 100 Idaho 1, 5, 592 P.2d 57, 61 (1979).

**3.** It is clear that this statute is subject to the rules of equitable estoppel. *See Grice v. Woodworth,* 10 Idaho 459, 466, 80 P. 912 (1904) (statutes for protection of married women "are in the nature of rules of evidence, and are subject to the same legal principles as are conveyances falling under the statute of frauds, and the rules of equitable estoppel and waiver.").

tions concerning her acquiescence in the sale of the timber." *Id.* Thus, the Court in *Fairchild* held that the wife was not estopped from claiming the protection of I.C. § 32–912.

In this case, clearly the conduct of the buyer in reliance upon the agreement is distinguishable from that in *Fairchild,* as is the conduct of the wives. The record demonstrates that the negotiations leading up to the agreement were carried on over a period of weeks and that one or both of the wives were present on several occasions. Respondents candidly admit "that Rosa and Ilene Rupp knew that their husbands were negotiating with the plaintiff." They also admit "that [the wives] knew the plaintiff was logging their property and that payments were being received for their timber." The payments to the respondents began in September of 1978 and continued through March of 1979. In addition, the record demonstrates that Calvin built and renovated logging roads on the property, cleared skid trails, purchased equipment to carry on his operations,[4] and cut and hauled timber pursuant to the agreement over the course of nine months.

The respondents argue that in order to establish an estoppel against them, Calvin had to prove that Ilene and Rosa Rupp falsely represented or concealed a material fact. They argue that because Ilene and Rosa Rupp did not take part in the negotiations leading up to the agreement (although they were present), there is no evidence from which a reasonable jury could conclude that they were guilty of any misrepresentation or concealment. Thus, the respondents contend that the trial court did not err in directing a verdict in their favor.

The argument made by the respondents is precisely that made by the dissent and rejected by the majority in *Grice v. Woodworth,* 10 Idaho 459, 80 P. 912 (1904). In

*Grice,* the wife of the seller had apparently made no representations to the buyer of the property. However, the Court held that she was estopped to invoke the statutory protections because she knew of the sale and improvements on the property, yet made no objection. Upon rehearing, the majority addressed the argument of the dissent more specifically and reasoned: "Equity does not permit her to remain silent as to her claims and by her conversation encourage appellants to continue their payments and improvements on the property," and then to deny the validity of the contract. 10 Idaho at 472, 80 P. at 916. Thus, the Court in *Grice* recognized that conduct from which acquiescence can be inferred may be sufficient to establish an estoppel.

More recently in *Brown v. Burnside,* 94 Idaho 363, 366, 487 P.2d 957, 960 (1971), this Court held that the trial court properly found a wife estopped to invoke the protections of I.C. § 32–912 because the evidence disclosed the wife was either "actually aware of the contract" to convey the property in question or "actually participated [in] and benefited from the contract during its duration." The Court reasoned: "[I.C. § 32–912] exists for the protection of the wife's interest in the community [5] and cannot be invoked to defeat a worthy claim against it where the wife has been a party to the contract and has received benefits therefrom." *Id. See Finlayson v. Waller,* 64 Idaho 618, 626, 134 P.2d 1069, 1072 (1943).

Our decisions demonstrate that the wives' failure to participate in the negotiations is not determinative of the issue of estoppel. Viewing the facts most favorably to Calvin, as we must, we find sufficient evidence from which a reasonable jury could conclude that Ilene and Rosa Rupp are estopped to invoke the protections of I.C.

---

4. Calvin borrowed money in September of 1978 from J.B. Lumber for a down payment on equipment for use in his logging operations, giving an assignment of monies receivable for the logs he was to deliver. That equipment was repossessed after Calvin was forced to terminate his logging operation.

5. I.C. § 32–912 was amended in 1974 to provide protection for both spouses for their interest in the community property. 1974 Idaho Sess. Laws ch. 194, § 2, p. 1502.

§ 32–912. Thus, the trial court erred in directing a verdict in favor of the Rupps on the issue of estoppel.

 Calvin argues that he is entitled to recover regardless of whether there is sufficient evidence to establish an estoppel since the property in question was partnership property as opposed to community real property. We cannot agree. The property in question was acquired in the names of Fawn and Jim Rupp at a time when both were married. Thus, the property was presumptively community property and the burden of proving otherwise was upon Calvin. *See Cook v. Cook,* 102 Idaho 651, 654, 637 P.2d 799, 802 (1981). The record is devoid of any evidence that the property was "acquired by purchase or otherwise on account of the partnership." *See* I.C. § 53–308 (defining "partnership property"). Similarly, there is no evidence of a valid conveyance of the property to the partnership after its original acquisition. Thus, we hold that the property in question was community property at all times relevant to this appeal. As a result, unless Calvin can establish an estoppel, Ilene and Rosa Rupp are entitled to invoke the protections of I.C. § 32–912. This does not mean, however, that Calvin's claims against the Salmon River Sheep Ranch (as a partnership) and Fawn Rupp as an individual fail.

> The agreement in this case provided: "Seller warrants that he has good title to the above described timber and represents that he has good right to sell and dispose of such timber; and does hereby agree to warrant and defend such title and right against all persons claiming adversely to him."

Calvin's complaint expressly states a cause of action against the Salmon River Sheep Ranch for breach of contract. The fact that the property in question is community property and not partnership property in no way defeats this claim. There is evidence in the record from which a reasonable jury could conclude that the partnership was bound by the agreement although only Fawn Rupp signed it. *See* I.C. § 53–309.[6] Thus, upon remand Calvin is entitled to pursue his claim for damages (as distinguished from specific performance) against the partnership. Similarly, he is entitled to pursue his damage claim against Fawn Rupp as an individual, since there is sufficient evidence in the record to support the allegations in the complaint that Fawn Rupp was guilty of misrepresentation or breach of warranty.

 The respondents contend that Calvin is not entitled to be reimbursed for the services he performed in cutting the timber that was left on the property. They argue:

> "Though the plaintiff contends that he was prevented from removing the down timber, the record shows that he was only prevented from cutting further timber, not removing the timber already cut. Accordingly, even if the Rupps were benefited in some way by the efforts involving cutting the timber, they received that benefit because the plaintiff abandoned the timber."

We cannot agree. Although Calvin's testimony suggests that when Fawn and Jim Rupp told him the contract was void the parties contemplated that Calvin could remove the timber already cut, the letter received later that day by Calvin from the Rupps' attorney suggests otherwise. Thus, it is for the jury to determine whether Calvin is entitled to damages for his expenses in cutting the timber left on the property or whether he abandoned the timber as alleged by the Rupps.

 J.B. Lumber argues that it is entitled to attorney's fees on appeal. Although Calvin appealed from the directed verdict in

6. I.C. § 53–309 provides in part:

"1. Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

favor of J.B. Lumber, on appeal he has not presented any argument to support his original claim that J.B. Lumber was guilty of interfering with the contract or of participation in a conspiracy. Accordingly, we hold that the appeal against J.B. Lumber was unreasonably pursued and that it is entitled to its reasonable attorney's fees. I.R.C.P. 54(e)(1).

The judgment is affirmed as to respondent J.B. Lumber and reversed as to respondents Salmon River Sheep Ranch and the Rupps. The case is remanded for a new trial against the Salmon River Sheep Ranch and the Rupps, individually and as partners of the Salmon River Sheep Ranch.

Costs to the appellant.

DONALDSON, C.J., BAKES, J., and SCOGGIN, J. Pro Tem., concur.

SHEPARD, J., concurs in the result.

BAKES, Justice, concurring:

I agree with the majority in reversing the directed verdict granted to the defendants. However, I do feel that, since this case is being returned to the lower court for jury trial, it should be pointed out that, under the facts of this case, plaintiff might prevail on his specific performance claims through application of the doctrine of part performance.

The doctrine of part performance is an equitable doctrine which, though not applicable in an action for damages, would apply in an action for specific performance. *Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961). Idaho courts have long held that where certain factors amounting to part performance are present, an oral assent to convey real property may be enforced absent compliance with the statute of frauds. Accordingly, if the appellant can prove at trial that the Rupp spouses did assent to sell the timber, and also show part performance through factors such as possession of the real property (timber, in this case), the making of substantial improvements, and partial payment, then he would be entitled to specific performance of the contract involved. *See McMahon v. Auger,* 83 Idaho

27, 357 P.2d 374 (1960); *Boesiger v. Freer,* 85 Idaho 551, 381 P.2d 802 (1963); *Wood v. Hill,* 70 Idaho 93, 212 P.2d 391 (1949).