90 P.3d 330

**Gerald D. LOVELASS and Phyllis A. Lovelass, husband and wife, Plaintiffs–Counterdefendants–Appellants,**

v.

**Gary SWORD and Carole Sword, husband and wife, Defendants–Counterclaimants–Respondents.**

No. 28896.

Supreme Court of Idaho,
Coeur d'Alene, October 2003 Term.

April 28, 2004.

Rude, Jackson & Daugharty, Coeur d'Alene, for appellants. Paul W. Daugharty argued.

Michael B. McFarland, Coeur d'Alene, for respondents.

SCHROEDER, Justice.

This case involves an attempt to enforce an alleged oral agreement for the sale and purchase of real property.

## I.

### FACTUAL BACKGROUND

On or about May 8, 1997, Gary and Carole Sword entered into an agreement with Keith Lovelass to purchase the real property which is the subject of this action. At the time of this agreement, Keith Lovelass represented to the Swords that he owned the property. In fact he did not own the property. Keith Lovelass and Mr. Sword executed a written memorandum, providing as follows:

Sold to Keith Lovelass, 1978 GMC P.U. VIN# TKL148J506028, for the sum of $3000. As down payment on 10 acres of property at Athol and house at 27320 Old 95 (34,5000) 5–8–97

[Signed] Keith Lovelass    [Signed] Gary Sword

The Swords obtained possession and began living on the property in May 1997. According to the Swords, the property had apparently been a "drug house," contained various chemicals, hundred of used hypodermic needles and other garbage, was filthy and not suitable for human habitation. The Swords expended considerable time, labor and funds to render the property reasonably safe and habitable. In accordance with the agreement the Swords made two payments of $200 each to Keith Lovelass in June and July of 1997.

In approximately August of 1997, when the Swords could not locate Keith Lovelass to make a payment, Mr. Sword telephoned Keith's father, Gerald Lovelass ("Mr.Lovelass"). Mr. Lovelass advised Mr. Sword that he, not his son, owned the property. Mr. Lovelass went to the property the following day and discussed the situation with Mr. Sword. According to Mr. Sword, Mr. Lovelass agreed that the price of $34,500 was fair, but that the payments needed to be $306 per month, rather than $200 per month in order to cover his payment on the property. Mr. Lovelass told Mr. Sword that he was going to discuss the situation with his wife and that he would see what he could do about getting their truck back.

Shortly after their initial encounter, Mr. Sword went to Mr. Lovelass's home and again discussed the real property. According to Mr. Sword, Mr. Lovelass said that he could not get the truck back for him and agreed to "carry the paper" until the Swords were able to obtain financing. Mr. Sword testified that he understood Mr. Lovelass's statements to mean that he was agreeing to honor the terms of his son's agreement and sell the property to the Swords with the only change being the increase in the monthly payment. Mr. Lovelass, however, denies that such an agreement ever existed, claiming that he agreed to allow the Swords to remain as renters until he decided what he wanted to do with the property.

Over the following three years, the Swords made the monthly payments of $306 to Mr. Lovelass, missing only two and one-half or three and one-half payments. During this same period—from the summer of 1997 until the fall of 2000—the Swords also made substantial improvements to the house and property. These improvements included an addition to the house, installation of a new roof, the addition of a water cistern and pump system, repairs to the plumbing and electrical system and an extensive cleanup of the property.

Carol Sword testified that at some point after June of 1999, Mr. Lovelass told her that he had changed his mind about selling them the property. He advised the Swords that they could purchase the property for its appraised value. He denied that there was any contract or agreement for the Swords to purchase the property. Mr. Lovelass thereafter served Swords with a 30–day notice to terminate tenancy in late August 2000.

Following some contact and discussions between the parties through their respective counsel, the Swords tendered the payment that was due in September. Mr. Lovelass accepted this payment. When the October 2000 payment was tendered, it was refused.

## II.

## PROCEDURAL BACKGROUND

On November 2, 2000, the Lovelasses filed a Complaint for Eviction and Slander of Title against the Swords. The Swords filed an Answer and Counterclaim, seeking an order of specific performance of the oral contract or, alternatively, a lien against the subject real estate for the reasonable value of repairs, improvements and additions made by the Swords while occupying the property. The district court granted partial summary judgment in favor of the Lovelasses and ordered that the counterclaims be dismissed with prejudice. Subsequently, the district court granted partial summary judgment to the Lovelasses disallowing the claim of lien.

The matter was tried before the district court which made findings of fact and conclusions of law followed by a judgment which provided in pertinent part that the Swords were entitled to performance of the oral land sale contract. The Lovelasses appealed, asserting that the district court erred in its determination that there was an enforceable land sale contract. The issues before this Court are 1) whether the evidence supports the trial court's application of the partial performance exception to the statute of frauds, 2) whether the oral agreement between the Swords and Mr. Lovelass to sell the Lovelass's community real estate is void under I.C. § 32–912 because Mrs. Lovelass did not join in the execution of the agreement, 3) whether the Lovelasses are entitled to attorney fees and costs on appeal.

## III.

### THE ALLEGED ORAL CONTRACT IS VOID UNDER I.C. § 32–912 BECAUSE MRS. LOVELASS DID NOT JOIN IN THE EXECUTION OF THE SALES AGREEMENT OR OTHERWISE ACT IN A MANNER TO LOSE THE PROTECTION OF I.C. § 32–912

■ The Lovelasses maintain that the oral contract was unenforceable under I.C. § 32–912 because Mrs. Lovelass did not join in the execution of the agreement. The district court did not elaborate on this issue in its findings and conclusions but did recognize that the issue had been raised and concluded, "that the conduct of the *parties* is consistent with the performance of a land sale contract." This determination necessarily includes Mrs. Lovelass. Estoppel is a recognized exception to the spousal joinder requirement of I.C. § 32–912 where the conduct of the non-consenting spouse is consistent with the existence and validity of the disputed contract. *See Lowry v. Ireland Bank*, 116 Idaho 708, 711, 779 P.2d 22, 25 (Ct.App.1989) (citing *Tew v. Manwaring*, 94

Idaho 50, 54, 480 P.2d 896, 900 (1971)). Therefore, it appears that the district court implicitly concluded that Mrs. Lovelass was estopped from invoking the protective provisions of I.C. § 32–912.

### A. Standard of Review

■ This Court does not set aside findings of fact, unless they are clearly erroneous. I.R.C.P. 52(a); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). If a district judge's findings of fact are supported by substantial and competent, although conflicting, evidence, this Court will not disturb those findings. *Marshall*, 130 Idaho at 679, 946 P.2d at 979. Additionally, this Court gives due regard to the district judge's special opportunity to judge the credibility of witnesses who personally appeared before the judge. I.R.C.P. 52(a); *Marshall*, 130 Idaho at 679, 946 P.2d at 979. This Court will not substitute its view of the facts for the view of the district judge. *Marshall*, 130 Idaho at 679, 946 P.2d at 979. However, unlike this Court's review of the district judge's findings of fact, this Court exercises free review over the district judge's conclusions of law. *Id.*

### B. The Lovelasses are not estopped from avoiding the oral contract under I.C. § 32–912.

It is undisputed that the land at issue was the Lovelass's community property at the time Mr. Lovelass dealt with the Swords. It is also undisputed that Mrs. Lovelass did not give her written consent to the sale of the community property. Therefore, the Lovelasses argue that the oral contract is void under I.C. § 32–912 since Mr. Lovelass could not sell, convey or encumber the Lovelass's community property without the written consent of Mrs. Lovelass.

■ I.C. 32–912 [1] provides the general rule that an attempted conveyance of com-

---

1. I.C. § 32–912 provides:
   Either the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract, except that neither the husband nor wife may sell, convey or encumber the community real estate unless the other joins in executing the sale agreement, deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and any community obligation incurred by either the husband or the wife without the con-

munity real estate by one spouse, without the written consent of the other, is void. *See* I.C. § 32–912; *Fuchs v. Lloyd,* 80 Idaho 114, 120, 326 P.2d 381, 384 (1958) (citations omitted). "While it is true that a contract to convey community real estate is void if not signed and acknowledged by both the husband and wife under this statute, this is not an inexorable rule," *Tew v. Manwaring,* 94 Idaho 50, 53, 480 P.2d 896, 899 (1971), and "conduct from which acquiescence can be inferred may be sufficient to establish an estoppel." *Calvin v. Salmon River Sheep Ranch,* 104 Idaho 301, 305, 658 P.2d 972, 976 (1983). Further, a non-consenting spouse's "failure to participate in the negotiations is not determinative of the issue of estoppel." *Id.*

■ Mrs. Lovelass was not a party to any agreement between Mr. Lovelass and the Swords. She was aware that the Swords began living on the property in the summer of 1997. Over the following three years, the Swords made substantial valuable and permanent improvements to the property. Mrs. Lovelass testified she was unaware of and did not consent to these improvements. There is no contrary evidence, only supposition that she would know, given the duration of the contract and the extent of the improvements to the property.

"[E]ven if an instrument lacks an acknowledgement of a spouse's signature, the spouse will be deemed to have waived the defect if his or her conduct is consistent with the existence and validity of the instrument." *Lowry v. Ireland Bank,* 116 Idaho 708, 711, 779 P.2d 22, 25 (Ct.App.1989) (citing *Tew,* 94 Idaho at 54, 480 P.2d at 900). During the duration of the agreement, the Swords made monthly payments to the Lovelasses. Ms. Lovelass acknowledged that she and her husband accepted these payments, but she testified they were intended as rental payments, rather than payments toward the purchase of the property. Again, to overcome this evidence one must infer that Mrs. Lovelass knew of the improvements to the property.

No evidence establishes that fact. The knowledge that Mr. Lovelass had cannot be imputed to Mrs. Lovelass by the sole fact of marriage. Nothing ties Mrs. Lovelass to any agreement Mr. Lovelass made. To allow his conduct by itself to bind her would defeat the purpose of I.C. § 32–912. There was insufficient evidence to conclude that Mrs. Lovelass was a participant in any agreements made by her husband or is otherwise bound by any such agreements.

## IV.

### THE LOVELASSES ARE NOT ENTITLED TO ATTORNEY FEES

The Lovelasses maintain that they are entitled to attorney fees on appeal pursuant to I.A.R. 40, 41 and I.C. 12–121. I.A.R. 40(a) provides that "[c]osts shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 41 allows this Court to award attorney fees only if some other statutory or contractual authority permits those fees; it is not authority alone for awarding fees. *Robbins v. County of Blaine,* 134 Idaho 113, 120, 996 P.2d 813, 820 (2000).

■ Idaho Code section 12–121 provides that "[I]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties...." Such an award is appropriate when this Court has the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The appeal was not defended "frivolously, unreasonably or without foundation." Therefore, the Lovelasses are not entitled to attorney fees and costs on appeal.

## V.

### CONCLUSION

The decision of the district court that the Swords are entitled to enforcement of a land

sent in writing of the other shall not obligate the separate property of the spouse who did not so consent; provided, however, that the husband or wife may by express power of attorney give to the other the complete power

to sell, convey or encumber community property, either real or personal. All deeds, conveyances, bills of sale, or evidence of debt heretofore made in conformity herewith are hereby validated.

sale contract is reversed. The case is remanded to the district court to determine if there remains in the case a claim for unjust enrichment by the Swords for the substantial improvements to the property.

The Lovelasses are awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices EISMANN and BURDICK concur.

Justice KIDWELL, dissents without opinion.