JOHN T. JACK, Appellant, v. P. F. COLD et al.

**Redemption by Lien Holders:** PURCHASE OF SALE CERTIFICATE. Under Code, section 4056, providing that the mode of redemption by a lien holder from a mortgage foreclosure shall be by paying the necessary amount into the clerk's office, a lien holder purchasing certificates of sale acquires none of the rights of a redemptioner, but holds subject to redemption, unaffected by any other incumbrances he may have.

REDEMPTION BY TITLE HOLDER. Under Code, section 4051, providing that the "terms of redemption from a mortgage foreclosure by the title holder shall be the payment into the clerk's office of the amount of the certificate and all sums paid by the holder thereof in effecting redemptions, added to the amount of his own lien," the title holder, in effecting redemption, is not required to pay any lien acquired by the certificate holder otherwise than by redemption.

CHANGE IN MODE BY STATUTE. A mere change in the mode of redemption from a mortgage foreclosure does not affect the right to redeem, and is not obviated by Code, section 51, providing that the repeal enacted by the Code "shall not affect any act done or right accruing or which has accrued."

WHO IS REDEMPTIONER. Code 1873, section 3109, provides that a redemption from a foreclosure sale may be made by a creditor, before the expiration of nine months, to the party, clerk or sheriff. A junior mortgagee bid on the property at a foreclosure sale under a prior mortgage, and received certificates of sale. Thereafter he filed affidavits, with respect to one tract, that he was the owner of the certificate of sale, and also the mortgage, and that under such mortgage he made redemption from himself as holder of the certificate, etc.; with respect to another tract, that the certificate was assigned to himself

by himself, and redemption made from himself, etc. The
land at the time exceeded in value the total amount of plain-
tiff's liens. *Held*, that, though not technically a redemptioner
in purchasing, he became such at the end of six months, and
his mortgage was extinguished by the execution of the sheriff's
deeds.

*Appeal from Shelby District Court.*—HON. N. W. MACY,
Judge.

WEDNESDAY, MAY 29, 1901.

COLD, being indebted to the Irwin Bank, executed three
promissory notes, of $1,000 each, to J. T. Jack, president,
January 10, 1896, payable, respectively, November 1, 1896,
January 1, 1897, and March 1, 1897, and six days later gave
a mortgage to Jack, individually, securing payment,
on the following described land: Southwest ¼ and
Southwest ¼ Northwest ¼ section 23, township 81,
range 38, West ½ and South ½ Southeast ¼ section 26, town-
ship 81, range 38,—subject to prior mortgages aggregating
$8,700. On March 3, 1897, to further secure payment, and
in consideration of extension of time, he executed another
mortgage on the West ½ Northeast ¼ section 36' township 81,
range 38, and the East ½ Southeast ¼ section 31, township
81, range 37, subject to incumbrances of $1,300 on each
place. The senior mortgage was foreclosed on North ½
Southwest ¼ and Southwest ¼ Northwest ¼ of section 23,
also on Northwest ¼ and Northwest ¼ Southwest ¼ of section
26, and on South ½ Southwest ¼ of section 23, and at the sale
the first two bid in by Jack, February 22, 1897, and the last
by Burmeister, five days later, and the certificate of sale as-
signed to Jack, November 16, 1897. When the year of re-
demption had expired, plaintiff obtained sheriff's deeds for
all this land. The senior mortgage on the West ½ Northeast
¼ section 36 was also foreclosed, and at the sale, February
27, 1897, bid in by Jack; but Cold's grantee deposited the
amount of the bid, together with interest and costs, with the
clerk of court, for the purpose of redemption. Two days

later Jack filed an affidavit to the effect that he was the owner and holder of the $3,000 mortgage mentioned, as well as of the certificate of sale, claimed the right to redeem from the latter, and offered to credit $1,000 on the mortgage debt, and notified said grantee that he refused to accept the amount deposited. Subsequently this redemption was adjudged sufficient, and the certificate surrendered. It should also be noted that Cold, having made arrangements with a party at. Council Bluffs to furnish the money with which to redeem, applied to Jack for a statement of the amount required, and the latter furnished the figures, which included the amount due on the $3,000 mortgage. This action, in which plaintiff asks for the foreclosure of said $3,000 mortgages against all the land covered thereby, save that on which sheriff's deeds have been issued, was begun August 19, 1897. Cold answered that plaintiff's debt was canceled by operation of law; that is, Jack's purchase at the sales, and procuring the assignment from Burmeister, followed by sheriff's deeds, constituted a. redemption under said mortgages, and extinguished the debt secured thereby. This view was taken by the district court, and the petition was dismissed. The correctness of the de-- cree as to the 80 acres redeemed by Cold's grantee is not questioned. The plaintiff appeals.—*Affirmed.*

*I. M. Earle* and *Harl & McCabe* for appellant.

*Byers & Lockwood* for appellees.

LADD, J.—It will be observed that Jack purchased part of the land at sheriff's sale, and took an assignment of the certificate of sale of the other part; and the question is, did this in either instance amount to a redemption under his. junior mortgage, or was he a mere purchaser? A somewhat radical change in the mode of redeeming was effected by the Code 1897. Formerly payment might be made by the creditor, before the expiration of nine months after the sale, to the party, clerk, or sheriff. Section 3109, Code 1873. Only

when made after the lapse of nine months was it essential
that the clerk receive the money and enter the transaction
of record.    It was said in *Goode v. Cummings* 35 Iowa.
67: "Before the expiration of nine months, it appears that
redemption is performed by the parties themselves without
the aid of the clerk,—without the transaction being of rec-
ord.    After the nine months the transaction is made of rec-
ord by the clerk, and the money required for redemption is
paid into his office for the use of the party entitled thereto."
*Lamb v. Feeley,* 71 Iowa, 742; *Fry v. Warfield-Howell-Watt
Co.,* 105 Iowa, 559.    But that portion of section 3109 of the
Code of 1873 authorizing payment "to the party, the clerk,
or the sheriff" was entirely omitted from the Code, and in lieu
of it and section 3118 was enacted section 4056: "The mode
of redemption by a lien holder shall be by paying in to the
clerk's office the amount necessary to effect the same, comput-
ed as provided, and filing therein his affidavit, or
that of his agent or attorney, stating as nearly as practicable
the nature of his lien and the amount still due and unpaid
thereon.    If he is unwilling to hold the property and credit
the debtor thereon the full amount of his lien, he must
state the utmost amount he is willing to credit him with.
If the amount paid to the clerk is in excess of the prior
bid and liens, he shall refund the excess to the party paying
the same, and enter such redemption made by a lien holder
upon the sale book, and credit upon the lien, if a judgment
in the court of which he is clerk, the full amount thereof
including the interest and costs, or such less amount as the
lien holder is willing to credit thereon, as shown by the affi-
davit filed."    This is the only mode of redeeming authorized,
and a complete record in the clerk's office is always accessible.
Lienholders may know therefrom at any time precisely what
has been done, and are not compelled to keep a lookout for
secret transactions between other creditors. The provisions
relating to redemption by a lienholder after the lapse of nine
months are entire eliminated.    Heretofore it has some-

times proven difficult to determine whether a lienholder, in taking an assignment of a certificate of sale, became a mere purchaser or redemptioner, for in either event the transaction could only differ in the matter of intention. Hence, when that has been done which the statute, as interpreted, declared might constitute a redemption, the purpose of redeeming was inferred, unless a contrary intention appeared. *Lamb v. Feeley, supra; West v. Fitzgerald,* 72 Iowa, 306. But under the present statute the lienholder, as freely as others, may purchase certificates of sale or other liens, and no presumption with respect to redemption will arise therefrom. In doing so he simply takes the place of the seller, and in that situation, as assignee holds subject to redemption, unaffected by any other incumbrances he may have. In other words, he can only tack another to his own lien, or his own to another lien, so as to compel payment of both, in redeeming from him, by obtaining that other through redemption by payment thereof into the clerk's office, and making a record of the transaction. The mere assignee of a lien no longer acquires the right of a redemptioner through the assignment alone, but, to accomplish this, must acquire it in the manner pointed out by statute. Nor is it necessary that the title owner, in order to redeem from the sale, as suggested by appellees, pay any lien procured by the certificate holder otherwise than by redemption. Section 4051 reads: "The terms of redemption, when made by the title holder, shall be the payment into the clerk's office of the amount of the certificate, and all sums paid by the holder thereof in effecting redemptions, added to the amount of his own lien, or the amount he has credited thereon, if less than the whole, with interest at contract rate on the certificate of sale from its date, and upon sums so paid by way of redemption from date of payment, and upon the amount credited on his own judgment from the time of said credit, in each case including costs." By "his own lien"

is evidently meant that on which redemption was made, and no other. If he has other liens, not procured through redemption, they are not to be taken into consideration in computing the amount to be exacted. As contended, no way is pointed out by which a senior incumbrancer who has taken an assignment of the certificate of sale as purchaser may be compelled to signify what amount, if any, he is willing to credit on his incumbrance, and allow the lien thereof to be extinguished. Nor was there any such provision in the Code of 1873. Whether that possible situation demands a remedy in the interest of the junior lienholder or execution defendant is a subject more appropriate for the consideration of the legislature than this court. The statute was prepared by the Code commissioners, its meaning is clear, and it accomplishes, as we think, that which they proposed in saying, "In this section it is attempted to make the method of redemption more definite, redemption to be effected in each case by paying the clerk."

II. The sale to Burmeister occurred before the adoption of the Code, October 1, 1897, but it was afterwards that the certificate of sale was assigned to Jack. Did the provision of the Code of 1873 in force at the time of the sale control in the matter of making redemption?

The repeal by the Code did "not affect any act done, any right accruing or which has accrued or been established, nor any suit or proceeding had or commenced in any civil case before the time when such appeal takes effect; but the proceedings in such cases shall be conformed to the provisions of the Code so far as consistent." Section 51, Code. As often said, rights, not remedies, are saved by this section; and, unless the change in remedy in some way affected existing or accruing rights, this statute has no application, except to a pending suit or proceeding, and even then the provisions of the Code are to be followed as far as may be. *Jones v. Insurance Co.,* 110 Iowa, 75; *Wormley v. Hamburg,* 40 Iowa, 22; *Tilton v. Swift,* 40 Iowa, 78; *Woods v. Haviland,* 59 Iowa,

476; *Kossuth County v. Wallace,* 60 Iowa, 503. "The right of a creditor to any particular remedy is not a vested right in the continuance of any special mode of proceeding, or the perpetuation of any remedy or remedial process which can be modified or abolished without impairing or taking away the right itself. A particular remedy existing at the time of the making of the contract may be abrogated altogether without impairing the obligation of the contract, if another and equally adequate remedy for the enforcement of that obligation remains, or is substituted for the one taken away." Beach, Modern Law Contract; *New Orleans & L. R. Co. v. Louisiana,* 157 U. S. 214 (15 Sup. Ct. Rep. 581, 39 L. Ed. 679). Was the right which the judgment conferred, or the obligation which the defendant assumed, affected—enlarged or abridged in any way—by the change in the law? The plaintiff had the perfect right to assignment of the certificate without redeeming, before the change. *Strceter v. Bank,* 53 Iowa, 178. That right continued unimpaired. Then taking the assignment, without more, would have been treated as a redemption; afterwards, as a purchase only. The choice of purchasing or redeeming was open after the change, as before. The method alone had been changed. What was done would have constituted a redemption before October 1, 1897. It did not after that. The inference from the taking of an assignment before then was that, as precisely what might be a redemption had been done, this had been intended. After then no such inferences were permissible, as the thing done could not amount to a redemption. But the right to redeem was in no way affected, as this might have been accomplished as readily through payment to the clerk as to the party. Undoubtedly alterations in redemption law may affect the rights of parties to contracts. See *Fonda v. Clark,* 43 Iowa, 300; *Barnitz v. Beverly,* 163 U. S. 118 (16 Sup. Ct. Rep. 1042, 41 L. Ed. 93). All we hold is that a mere change in the mode of redeeming, without more, does not

affect such rights, and is not obviated by section 51 of the Code.

III. A more difficult question arises with respect to the other sales. Plaintiff bid the two parcels of land in and acquired certificates of sales February 22, 1897. For six months—until August 22d of that same year—the defendant enjoyed the exclusive right to redeem. Up to that time there could, then, have been no redemption by Jack under his junior mortgage. But was there a redemption thereunder after that time, and before the change in the law, October 1, 1897? In *Wilson v. Conklin,* 22 Iowa, 452, the holder of a judgment obtained an assignment of the certificate of sale within six months after the sale of the land; but, without saying this amounted to a redemption if held after the lapse of six months, payment of both liens was required to redeem. In *Stephens v. Mitchell,* 103 Iowa, 65, the certificate was assigned to Stephens two days after the sale. About the same time he purchased a junior mortgage of Gregory, who had been a party to the foreclosure, though defaulted, foreclosed it, and bid in the land at sale. Just previous to the expiration of 12 months from the first sale, the grantees of the execution defendant sought to redeem by paying the amount of the assigned certificate, interest, and accrued costs. It was there said in the opinion of the district judge, adopted by this court: "If the assignment to him of the Gregory mortgage did not take immediate statutory effect as a redemption from the prior sale, it would, by operation of law, have that effect at the expiration of six months following the first sale. The provisions of the statute providing for and regulating redemptions by creditors have no application to a redemption made by the defendant. If the defendant had in this case sought to make redemption at the time of his conveyance to Sloane and Wynkoop, he would have been obliged to redeem from both sales in order to give validity to the redemption. His grantees are in no better position, under the circumstances of this case, and have no greater

rights than he possessed. Their redemption, to be effectual, must be from both sales." Again speaking through Granger, J.: "Had he made the purchase after six months, and within the nine months, the transaction would have been a redemption by Stephens from Griggs, as held in *Lamb v. Feeley,* 71 Iowa, 742; *Lamb v. West,* 75 Iowa, 399; and there would then be no question but that, to redeem Lindenau or his assigns must do so from both judgments. As Stephens purchased the Griggs certificate within the six months, it was not technically a redemption, and within the six months Lindenau could have redeemed by paying the Griggs judgments. This was not done, and Stevens held both judgments during the period in which he could have acquired both and been protected. The practical effect is the same as to the judgment debtor." These cases do not differ essentially from that before us. A fair test by which to determine whether the creditor is a redemptioner would seem to lie in answering whether the claim must be paid by the title holder in order to redeem. If he must pay the lien acquired to free his property from the incumbrance previously held, it is because the former is tacked to the latter through redemption. Now, Cold must have paid Jack the mortgage, in order to have redeemed from the sale, under the rule of the cited cases; and, if so, then it is for the reason that Jack held the certificates as a redemptioner. True, Jack testified he bought at the sale as an investment, without thought of redeeming. At that time he could not have redeemed. If, however, there be doubt as to plaintiff's purpose of being treated as a redemptioner, it is dissipated by the affidavits he has filed. With respect to an 80-acre tract bid in by him and redeemed by Cold's grantee, he filed an affidavit to the effect that he was owner of the certificate of sale and also the mortgage, and further stated that "under said mortgage he makes a redemption from himself, as holder of the certificates of purchase, and is willing to credit thereon $1,000." In another, where he obtained an assignment of a certificate,

he made oath "that the above certificate was assigned to John T. Jack by John T. Jack, and redemption made from himself. I am willing to credit the sum of $450." True, these were filed after the lapse of nine months from sales, but nevertheless indicate his intention of availing himself of the advantages of redemption. In both, reference to a previous redemption is evidently intended, as that could not have been accomplished by him when filed. This view finds further support in the proof that the land at the time exceeded in value the total amount of all the plaintiff's liens. Under all the circumstances, we are inclined to the opinion expressed in *Stephens v. Mitchell,*—that, though not technically a redemptioner in purchasing, he became such at the end of six months before the change in the law, and that his mortgage was extinguished in the execution of the sheriff's deeds.

The point is made that the Bank of Irwin, a partnership composed of plaintiff and one McMullen, was the owner of the mortgage. On this subject it is enough to say that Jack made oath at least four times that it was his property, and, regardless of whose it may be, he was fully authorized to treat it in all respects as his own, and he did so.—AFFIRMED.