606 P.2d 967

**EASTERN IDAHO PRODUCTION
CREDIT ASSOCIATION, a cor-
poration, Plaintiff-Respondent,**

v.

**PLACERTON, INC., a corporation, and
Charles W. Beeler,
Defendants-Appellants,**

v.

**Darwin L. YOUNG, O. W. Robinson,
Adolph Mauch, Lafe Holbrook, and Lar-
ry L. Smith, Defendants-Respondents.**

**No. 12710.**

Supreme Court of Idaho.

Feb. 12, 1980.

**864**

Callis A. Caldwell of Johnson & Olson, Pocatello, for defendants-appellants.

Louis F. Racine, Jr., of Racine, Huntley & Olson, Chartered, Pocatello, John D. Hansen of Hansen & Boyle, Idaho Falls, for defendants-respondents.

McFADDEN, Justice.

Plaintiff-respondent Eastern Idaho Production Credit Association (hereafter EIPCA) is a corporation organized and chartered under the Federal Farm Credit Act with a principal place of business in Pocatello, Idaho. Defendant-appellant Placerton, Inc. is a California corporation engaged in the cattle and agriculture business and authorized to do business in Idaho. Defendant-appellant Charles W. Beeler is secretary and chairman of the Board of Directors of Placerton, Inc. Appellants appeal from a judgment for EIPCA on six promissory notes executed by Placerton and co-signed by Beeler.

The parties first became acquainted in 1971 as a result of their mutual interest in certain Idaho property referred to in these proceedings as the Houtman property. EIPCA had made loans to Houtman which were in default in the sum of $1,241,930 plus interest. The notes were secured by real property mortgages and personal property security interests held by EIPCA. The mortgaged real property was desired by Placerton for use as a cattle ranch. Negotiations between EIPCA and Placerton for the transfer of EIPCA's mortgagees interest in this property ensued.

Meanwhile, on January 12, 1972, Placerton had entered into two agreements with one Ben Shrier, a resident of California, concerning two parcels of property owned by Placerton located in Suisun City, California. The agreements in effect provided for the development of the property by Shrier, contingent upon obtaining interim and permanent financing. These agreements recited initial payments by Shrier to Placerton of $200,000 and $350,000, and acknowledged Placerton's receipt of these sums. Additional payments of $250,000 and $850,000 were provided for in the agreements, contingent upon obtaining sufficient financing for the development.

On April 22, 1972, EIPCA, Placerton and Beeler arrived at an agreement. Placerton assigned to EIPCA all rights under the two contracts with Ben Shrier concerning the California property. EIPCA assigned to Placerton all notes, mortgages and security interests related to the Houtman indebtedness. Placerton agreed to foreclose on the mortgage and acquire title to the Houtman property subject to Houtman's rights of redemption. EIPCA agreed to advance Placerton sufficient sums to (1) pay principal and interest charges owing on the mortgage which had priority over EIPCA on the Houtman property (estimated at $145,000); (2) pay real property and personal property taxes on the property (estimated at $22,-000); (3) pay past due interest owing to EIPCA on the Houtman property (estimated at $80,000); and (4) pay up to $65,000 to fence in the property for raising cattle. EIPCA also agreed to advance Placerton $500,000 as working capital to commence

the cattle operations, and to accept all Placerton's drafts up to $1,000,000 for the purchase of cattle. These loans were to be evidenced by promissory notes executed by Placerton and personally guaranteed by Beeler. The notes were to be secured by the cattle to be purchased and by Placerton's mortgage of the Houtman property once it had acquired title by foreclosure.

The April 22, 1972, agreement also contained an option, whereby EIPCA could require Placerton to re-purchase the Shrier contracts for $500,000 in the event EIPCA had not received from Placerton the value of the Houtman indebtedness ($1,241,930) and interest thereon by December 31, 1972. As events turned out, Placerton failed to make the required payment on the Houtman indebtedness. And on January 17, 1973, in an addendum agreement EIPCA exercised its option. Placerton thereby agreed to repurchase the Shrier contracts for $500,000, payable on or before April 17, 1973. The addendum agreement further provides that EIPCA would advance $3,500,000 for the purchase of additional cattle, and $516,118.01 plus accrued interest on the Houtman indebtedness so that Placerton could liquidate the indebtedness. These notes were also secured by the cattle to be purchased, and were co-signed by Beeler in his individual capacity.

By April 17, 1973, Placerton had not paid the $500,000 required by EIPCA's option. Thus a second addendum agreement was executed by the parties on July 17, 1973. The past-due $500,000 option payment was to be evidenced by a promissory note executed by Placerton and co-signed by Beeler. EIPCA was to retain title to the Suisan City property (the subject of the Shrier contracts) until the note was paid. EIPCA further agreed to subordinate its first mortgage position on the Placerton ranch property (Houtman property) to Metropolitan Life Insurance Company to allow Placerton to negotiate a $2,000,000 loan to refinance the cattle operations.

Pursuant to the original April 22, 1972, agreement and the two addendum agreements, Placerton and Beeler executed six promissory notes to EIPCA totaling $6,771,371. EIPCA held mortgages on Placerton's real property and personal property security interests in Placerton's cattle and equipment securing the notes. In addition, on July 6, 1973, Beeler executed and delivered to EIPCA a continuing personal guarantee to pay all indebtedness up to $7,000,000. As of March 1, 1974, Placerton and Beeler had defaulted on both interest and principal payments on all notes.

This action was filed on March 25, 1974 by EIPCA to foreclose on the real property mortgages and security interests securing the notes. The amount in default at the time of the amended complaint was $3,643,885.12 principal and $171,911.05 interest, with additional interest accruing at the rate of $962.31 per day. The complaint sought a deficiency judgment against Placerton and Beeler in the event the proceeds from the foreclosure sale should be insufficient to discharge the debt.

Appellants' answer admitted the execution of the April 22, 1972, agreement by Beeler, but denied that this instrument constituted the parties' actual agreement. Appellants alleged that this agreement was procured by fraud and that EIPCA fraudulently placed camouflaged provisions in the agreement contrary to the parties' negotiations. Appellants admitted executing the six promissory notes, but alleged that the notes did not give the correct date or amount of monies actually loaned. Appellants admitted executing the real property mortgage, but alleged that EIPCA fraudulently added properties to the legal description which appellants did not intend to mortgage. The answer also alleges unfair and deceptive accounting practices, overreaching, economic duress, and unconscionability on the part of EIPCA. Appellants also counterclaimed against EIPCA and its board of directors on grounds of usury, fraud, and unconscionability and sought recovery for upwards of $7,000,000 in damages.

Prior to the date set for trial, Metropolitan Life Ins. Co. filed a separate action against Placerton to foreclose its senior

mortgage on property also subordinately mortgaged to EIPCA. Placerton did not redeem the property, but EIPCA did redeem from the Metropolitan foreclosure for $2,623,180.94. EIPCA also redeemed from judgments of foreclosure of a mortgage of Mutual of New York Life Insurance Company for $247,466.15, and purchased at sheriff's sale for $51,020.71 mortgaged property foreclosed by Kansas City Life Insurance Company. These three mortgages were each prior to EIPCA's mortgage.

EIPCA changed its theory of recovery in this case, claiming that because it had acquired title to the mortgaged property, this action was now one to recover on the debt, not for foreclosure of the security.[1] This change in theory by EIPCA gave rise to appellants' filing on December 1976 a "supplemental counterclaim" which alleged that EIPCA had acquired title for less than the property's fair market value. The pleading prayed that the court give appellants a credit against their debt in an amount equal to the difference between the fair market value and price EIPCA paid, and that in the event the amount owing is less than the present market value minus costs and expenses incurred by EIPCA in redeeming, they ask for a lien on the property to secure payment of the difference.

The case was tried to the court sitting without a jury. After a four day trial, the court entered its memorandum opinion, findings of fact, conclusions of law and judgment for EIPCA. The court found, *inter alia* : (1) that appellants wholly failed to prove any elements of fraud, usury, duress or unconscionability on the part of EIPCA or on the part of EIPCA's board of directors in these transactions; (2) that all agreements were supported by adequate consideration and fully performed by EIPCA; (3) that Charles Beeler was an experienced, capable, and competent businessman who understood and agreed to all provisions of the agreements; (4) that the agreements were clear and unambiguous and freely entered into; (5) that the promissory notes were correct as to dates and amounts of funds advanced; (6) that EIPCA's accounting procedures were commercially reasonable and did not confuse or deceive appellants; (7) that EIPCA did not exceed the rate of interest permitted under either the Farm Credit Act or the statutes of Idaho. Because EIPCA had already acquired title to the property which was the subject matter of this action, the court concluded that the action was no longer one to foreclose, but had become one to recover on the notes. Judgment was entered against appellants on the debt for $4,667,382 plus attorney fees of $90,000.

Appellants' first issue on appeal is whether the $500,000 promissory note executed pursuant to a prior "option agreement" is voidable for lack of consideration. Because the parties agreed that EIPCA was to retain title to these California properties until the note was paid, appellants contend that they received nothing when they executed the note and that the district court erred in granting judgment on it.[2] This court disagrees with appellants' contention.

By the terms of the April 22, 1972, agreement, EIPCA had the option to require appellants to repurchase the Shrier contracts in the event the Houtman indebtedness was not satisfied prior to December 31, 1972. When the agreed to time had arrived, the indebtedness had not yet been satisfied. EIPCA therefore exercised its option, and appellants agreed to pay the

1. On the day of trial, at a conference with the court, the parties entered into various stipulations concerning admission of exhibits. At that conference, EIPCA called attention to its answer to appellant's supplemental counterclaim which alleged that it had redeemed two of the senior mortgages held by insurance companies and paid the other senior mortgagee the balance of its mortgage for a sheriff's certificate of sale. EIPCA then advised the court and appellant that it was proceeding with the action on the theory that this was an action for debt and not for foreclosure of the mortgage.

2. As a side issue appellants contend that foreclosure proceedings should first have been instituted in California on this indebtedness. However, under *Canadian Birkbeck Ins. & Sav. Co. v. Williamsen*, 32 Idaho 624, 186 P. 916 (1920), I.C. § 6–101 relates solely to mortgages on property in Idaho.

$500,000 by April 1973. When appellants failed to make this payment, the parties agreed to an extended time for payment, to be evidenced by a promissory note due October 5, 1973.

■ It is well settled in this state that an agreed-to forebearance from suing on a matured contract right is sufficient consideration to support a promise. *Frasier v. Carter*, 92 Idaho 79, 437 P.2d 32 (1968); *McMahon v. Auger*, 83 Idaho 27, 357 P.2d 374 (1960). Moreover, it is evident from the course of these transactions that the "option-agreement" and note executed pursuant thereto were but one aspect of the parties' entire bargain. Many promises were made by both sides, one of which was the promise to buy back the Shrier contracts if the indebtedness was not satisfied. A promise for a promise is adequate legal consideration to support a contract. *Caldwell v. McKenna*, 54 Idaho 552, 33 P.2d 366 (1934); *Knack v. Industrial Commission*, 108 Ariz. 545, 503 P.2d 373 (1972).

■ The next issue is whether substantial and competent evidence exists to support the district court's findings that no fraud, duress, usury, or economic coercion tainted the parties' bargain. Suffice it to say that this court has carefully reviewed the extensive record in this case and concludes that substantial and competent evidence exists to support the district court's findings on these factual matters. We also find substantial and competent evidence to support the district court's computations regarding the sums due as principal and interest on the various promissory notes. I.R. C.P. 52(a); *Skelton v. Spencer*, 98 Idaho 417, 565 P.2d 1374 (1977), *cert. den.* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1977). These findings are therefore binding on this court.

The final issue, and the crux of this appeal, is whether the district court erred in concluding that EIPCA's redemption and acquisition of title to the mortgaged property converted this action from one of foreclosure to one of recovery on the debt. The net result of the district court's conclusion was that EIPCA, through redemption, acquired the property which secured the debt and in addition obtained a judgment for the full amount of that debt. For the reasons stated below we hold that the district court erred in this conclusion. We therefore reverse the judgment and remand the cause for further proceedings.

■ As stated above, EIPCA commenced this action to foreclose on the mortgage. Indeed, under Idaho law, this is normally the only action permitted for recovery of any debt secured by a mortgage upon real property. I.C. § 6–101; *Jaussaud v. Samuels*, 58 Idaho 191, 71 P.2d 426 (1937). The real property mortgage held by EIPCA was secondary to three other mortgages held by Metropolitan Life Insurance Company, Mutual of New York Life Insurance Company and Kansas City Life Insurance Company. These three senior mortgagees foreclosed subsequent to the filing of the complaint in this action.

EIPCA redeemed from Mutual's and Metropolitan's prior mortgages for $247,466.15 and $2,623,180.94, respectively. Sheriff's certificates of sale were issued to EIPCA, and following appellants' failure to redeem, fee title to these two mortgaged properties became vested in EIPCA. The property subject to the Kansas City mortgage foreclosure was paid for by EIPCA for which a sheriff's certificate was received, and following appellants' failure to redeem, title to this property also became vested in EIPCA. This circumstance, according to the district court, rendered the foreclosure action superfluous and entitled EIPCA to recover on the full amount of the unpaid debt.

■ The precise question presented here, i. e. the effect of a redemption by a junior mortgagee upon the unpaid mortgage debt, is a matter of first impression in this state. Although two early New York cases reach the opposite conclusion, the majority of cases passing upon this question have held that redemption by a junior lienor from a foreclosure of his debtor's property constitutes a satisfaction of the debt to the extent of the amount by which the value of the mortgaged property exceeds the cost of

redemption. *Hughes v. Young*, 58 Ariz. 349, 120 P.2d 396 (1941); *Jack v. Cold*, 114 Iowa 349, 86 N.W. 374 (1901); *Crown Iron Works Co. v. Melin*, 159 Minn. 198, 198 N.W. 462 (1924); *Northland Pine Co. v. Northern Insulating Co.*, 145 Minn. 395, 177 N.W. 635 (1920); *Sprague v. Martin*, 29 Minn. 226, 13 N.W. 34 (1882); *Miller v. Little*, 37 N.D. 612, 164 N.W. 19 (1917); *Work v. Braun*, 19 S.D. 437, 103 N.W. 764 (1905); 138 A.L.R. 949–955; G. Osborne, Handbook on the Law of Mortgages § 310 (2d ed. 1970); 3 C. Wiltsie, Real Property Mortgage Foreclosure § 1252 (5th ed. 1939).

The reason underlying this rule is that the mortgagee, having appropriated the security in satisfaction of the debt, must fully exhaust such security before proceeding against the debtor for a deficiency judgment. *See Jeppesen v. Rexburg State Bank*, 57 Idaho 94, 62 P.2d 1369 (1936); *Barnes v. Buffalo Pitts Co.*, 6 Idaho 519, 57 P. 267 (1899). To allow the creditor to retain the security without ascertaining its value, and then to give him a judgment for the full amount of the debt, is contrary to the policy of Idaho law requiring foreclosure prior to recovery on the debt. As stated by the Supreme Court of Minnesota in *Sprague v. Martin, supra* 13 N.W. at pp. 37–38:

> "As the foreclosure proceeding by the mortgagee is a process by which the mortgaged property is applied to the payment of his debt secured thereby, so the successive redemptions by creditors is a proceeding for the enforcement of their respective liens, and applying the property to the satisfaction of debts thus secured.
>
> "  .   .   .
>
> "In his case [redeeming junior mortgagee], as in that of creditors prior to himself, the right of redemption depends upon the existence of a debt and a lien already acquired upon the property. Only as he is a creditor, having a vested right to have the property applied to the satisfaction of his debt, is he given this statutory right of redemption. It is to him a legal remedy, by pursuing which he voluntarily appropriates to himself in fee that specific property upon which rests the lien securing his debt. It is thus, in legal effect, a statutory strict foreclosure of his lien. It cannot affect the result that in the statute and in common speech we call the proceeding a redemption. The proceeding itself is the legal appropriation directly to himself by the creditor and lienholder of the property by virtue of his debt and lien, the equities and title of others being extinguished. Such an appropriation of mortgaged property by a mortgagee we term a strict foreclosure; and, as the authorities already cited show, it operates as payment *pro tanto* of the mortgage debt, although there has been no sale of the property, and no determination by any means of the extent to which the debt is thus satisfied.
>
> .     .     .     .     .
>
> "In the case of the mortgagee who makes a strict foreclosure of his mortgage, as well as in the case of the creditor having a lien by judgment or mortgage, or otherwise, and who acquires the title by redemption, the essential principle is, that, in a manner prescribed by the law, as a remedy in their behalf, they have appropriated the security on account of the debt. Having done so, and thereby acquired property equal to or exceeding in value the debt, no principle of law or equity supports the claim that the debt is still unimpaired, and that its collection may be enforced at law or by further redemptions under the statute or in equity. It is true, there is no provision made by statute as to the effect of redemption by creditors, as respects the debt, but it does not follow that the redemption is not a satisfaction of the debt to the extent of the value of the property, less the sum paid to effect redemption. There is nothing in the statute to forbid such a result and it is consistent with equity and the analogies of the law."

The court in Sprague also distinguished the two early New York cases which reached the conclusion that redemption by a

junior lienor did not affect the amount of the junior lienor's debt:

"We are aware that a different conclusion has been expressed in New York, (*Van Horn v. McLaren*, 8 Paige 285 [1840]; *Emmet's Adm'rs v. Bradstreet*, 20 Wend. 50 [1838].) But these cases are of less value to us as authority in this case than they would otherwise have been, because of the difference in the statutes of the two states. The statute of New York respecting redemptions (from execution sales) prescribes no order in which, as among creditors, the right of redemption shall be exercised; and, as was considered in the case first above cited, a senior creditor may redeem from a junior creditor (who has made redemption from a purchaser) by simply refunding the amount paid by the latter to effect redemption, and without paying the lien of such junior creditor. Stress was therefore laid upon the fact that to give to the redemption by the junior creditor the force of a satisfaction of his judgment, and to then allow the senior creditor by redemption to divest him of his interest in the property, simply reimbursing the sum paid by the junior creditor to redeem, would be to deprive him of his judgment and give him nothing in return. Such could not be the result of the operation of our statutes relating to redemptions." *Id.* at 38–39.

Our statutes, as do the Minnesota statutes, preclude the inequitable result possible under the New York statutes which were the basis of decision in *Van Horn v. McLaren* and *Emmet v. Bradstreet, supra.* Under I.C. § 11–401(2), by the very definition of redemptioner, only a junior mortgagee having a mortgage subsequent to that lien for which the property was foreclosed can redeem. There is no possibility that a senior mortgagee could come in and redeem from a junior mortgagee without paying the amount of the junior lien, which was the potential consequence of the New York statutes. Accordingly, this court adopts the reasoning of the majority of courts which have considered this question, and we hold that redemption by a junior mortgagee con-

stitutes a satisfaction of the mortgage debt to the extent of the amount by which the value of the mortgaged property exceeds the sums paid for that redemption.

I.C. § 6–108 provides:

"No court in the state of Idaho shall have jurisdiction to enter a deficiency judgment in any case involving a foreclosure of a mortgage on real property in any amount greater than the difference between the mortgage indebtedness, as determined by the decree, plus costs of foreclosure and sale, *and the reasonable value of the mortgaged property, to be determined by the court in the decree upon the taking of evidence of such value.*" (Emphasis added.)

This statute was added by the Idaho legislature in 1933 to afford greater protection to the large numbers of debtors facing the prospect of defaulting on their mortgage debts. The statute substitutes the fair market value of the property for the price at foreclosure sale as the amount to be deducted from the debt in order to fix the amount of the deficiency judgment. And it requires the district court to take the necessary evidence to determine the value of the property. The legislative purpose behind this type of statute is explained by Professor Osborne:

"The mortgagee is not entitled to recover more than the full amount of his mortgage debt. When the mortgagee buys in the property at less than its actual value and gets such a judgment [for the deficiency] he is getting something more than a full recovery and getting it at the expense of the mortgagor. His profit is the difference between the actual value of the property and the price at which it is bid in. Such a profit usually accrues even in ordinary times, and in a depression it becomes so great as to be shocking. Taking into account the difficulties of boosting the amount that the property will fetch so as to close the gap, it is not difficult to understand why legislatures in the thirties turned to a new technique. Instead of measures attempting to insure

an adequate sale price for the property, the price obtained through the sheriff's sale was abandoned as a test of the deficiency. For it was substituted the 'fair value,' or some similar standard, of the premises . . . ." G. Osborne, *supra* at § 335, pp. 703–4 (footnotes omitted). This statute has been left in full force and effect to this day, and is applicable to the facts of this case. It requires the district court to make a determination of the fair market value of the mortgaged property, and to apply the difference between this value and the amount paid to redeem (and purchase) the mortgaged property as a credit against the money judgment already awarded.

The appellants by their supplemental counterclaim alleged in summary that the respondents by redeeming the property for less than its fair market value became unjustly enriched at the expense of the appellants. In its answer to the supplemental counterclaim EIPCA admits the redemptions and purchase, and set forth the amounts paid therefor. They further alleged that the combined amounts owing by appellants together with the amounts paid for redemptions and the certificate of sale exceed the fair market value of the property. Thus the very issue of value as spelled out in I.C. § 6–108 arose, but was never dealt with by the trial court.

Immediately prior to the trial of this action, the parties engaged in a conference with the trial court at which time various stipulations were entered into between the parties involving certain stipulations of fact and the admission of certain exhibits. During this conference EIPCA reiterated to the court and appellants that it had changed its theory of the case from one of foreclosure of the mortgage to an action on the debt.

During the course of this conference it was also stipulated that EIPCA as a subsequent encumbrancer had redeemed the properties from Metropolitan Life Insurance Company and from Mutual of New York Life Insurance Company for the amounts specified and again as a subsequent encumbrancer had paid Kansas City

Life Insurance Company for a sheriff's certificate of sale, the amount specified. As a part of the stipulation, however, it was agreed that appellants entered such stipulation without prejudice of their positions taken in their answers and counterclaims. Thus, although appellants agreed to stipulate to the facts of redemption and amounts paid, and also the purchase of the certificate of sale, appellants still relied upon their theory that this action should be one for foreclosure, or as stated in their amended counterclaim, in the alternative, for one seeking credit for any balance due on the debt as determined by computation of the fair market value of the property less amounts expended for acquiring title by EIPCA.

The district court concluded that the acquisition of title to the mortgaged property mooted the necessity for foreclosure proceedings and changed this action to one for recovery on the debt. This conclusion overlooked the impact of I.C. § 6–101, which allows but one action for the recovery of a debt secured by real property, and of I.C. § 6–108, which requires determination of the fair market value of the mortgage property before a deficiency judgment can be awarded.

Although appellants in their first brief adhere to their theory that they are entitled to have a decree of foreclosure of the mortgage or in the alternative to be given credit for the differences between the fair market value of the property and the amounts paid by EIPCA for the title to this property, in their reply brief the appellants have stressed the second approach. In their reply brief, appellants strenuously argue that this action was before the trial court sitting as a court of equity, and that it would be totally inequitable for EIPCA to have the property, title to which they acquired by reason of their status as a junior encumbrancer, and still obtain a judgment against appellants for the full amount of the indebtedness without any credit against the indebtedness. It is the conclusion of the court that there is merit in this latter contention. *See, Boesiger v. Freer*, 85 Idaho

551, 381 P.2d 802 (1963); *Fogelstrom v. Murphy*, 70 Idaho 488, 222 P.2d 1080 (1950).

We find no error by the trial court in the computation and its determination as to the validity and amounts due under the promissory notes involved.[3] That portion of the judgment determining the amounts due under the notes and for attorney fees is affirmed. However, the cause is remanded to the trial court for determination of the reasonable value of the mortgaged property involved in the action pursuant to I.C. § 6–108, with the valuation to be determined as of the date of the original judgment in this action.[4] After the court has established this valuation of the property, the court shall then compute the sum of (1) the amount that EIPCA paid to redeem and/or purchase on the prior mortgages at the foreclosure sale, plus statutory interest and costs previously incurred,[5] and (2) the judgment on the notes, attorney fees and costs affirmed above. Should the sum of items (1) and (2) above be greater than the valuation of the property as determined above, the court shall enter a deficiency judgment for the difference, with interest computed from the date of the original judgment. No costs allowed.

DONALDSON, C. J., and BAKES, J., concur.

BISTLINE, Justice, specially concurring.

Although I have joined the Court's opinion, I feel constrained to write my views for any benefit which may accrue to the parties on what is a most perplexing case. It would seem to me that EIPCA should be required to foreclose its mortgage in the ordinary manner, as it started out to do. Because proceedings on remand as directed by the Court's opinion may produce an ultimate result not much dissimilar to foreclosure and sale, I will accordingly state my views briefly.

When the Kansas City Life Insurance mortgage was foreclosed, EIPCA, as a purchaser at the sale, bid the sum of $51,020.71, which bid was accepted. It debited Placerton's account in that amount and quotes in its brief 55 Am.Jur.2d *Mortgages* § 259 (1971) for the proposition that a junior mortgagee should have the right to pay off prior mortgage liens and stand subrogated. In fact, generally I have always understood as an economic factor that a lender does not loan on a second or third mortgage without realizing that he may eventually have to pay those prior mortgage debts. But he will also have subrogation rights.

As I understand EIPCA's position, however, it would make a distinction, and a vital one, as to a different legal effect in the paying off of a prior mortgage lien depending on when it takes place in point of time, and how. If I follow its argument correctly, here it claims that, although it merely tacked the Kansas City mortgage onto the account of its own mortgage transaction with Placerton, in regard to the other two prior mortgages with Mutual of New York and with Metropolitan, its position is better by reason of having not bid in, instead redeeming from the purchasers who bought at the two sales. Then, claims EIP-

3. The amount paid to redeem or purchase should only be added back to the judgment on the notes if those amounts were not previously included in the balance due on the notes account. There is some suggestion in the record that the amount paid by EIPCA on the Kansas City mortgage may have also been included in the judgment on the notes, which would constitute a double credit. The trial court should make this determination.

4. While I.C. § 6–108 provides for the determination of the reasonable value of the mortgaged property, it does not provide guidance as to the time when the valuation should be fixed, i. e. whether the value should be computed as of the time of redemption of the prior mortgag-es, or as of the time of sale when there is a foreclosure of the mortgage. The statute does provide that "the reasonable value . . . be determined by the court in the decree upon the taking of evidence of such value." This clause would seem to indicate that valuation for the purposes of the statute should be that as it existed at the time of entry of the decree in the cause. Research has uncovered no case dealing with this issue, possibly for the reason that at the time of decision of many of the older cases the economy was not in a state of inflationary change as is presently existing.

5. See note 3, *supra*.

CA, as to these two transactions, when Placerton did not redeem in turn, EIPCA acquired Placerton's legal title, and it is not obliged to foreclose its mortgage. As compared to the result it says followed from the manner in which it handled the Kansas City foreclosure in order to protect itself, this seems on its face to be an incongruous result.

In the first place EIPCA made its loan and accepted a junior mortgage knowing that it might have to take care of the prior mortgages. It also knew that when it did foreclose Placerton had a right of redemption. And it knew that Idaho law requires a foreclosure of a mortgage before an independent action on the indebtedness may be brought, so long as the security has not become valueless. Had EIPCA taken an outright deed to the property rather than a mortgage, the teaching of *Fond v. McCreery*, 55 Idaho 144, 39 P.2d 766 (1934), is that a mortgage foreclosure action would be required, where the deed was found to be a security device. There the Court quoted from what is now I.C. § 6–104: "A mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property *without a foreclosure sale.*" 55 Idaho at 152, 39 P.2d at 769. (Emphasis added)

A clear implication of I.C. § 6–108 is that where the mortgagee intends to seek a deficiency there must be a foreclosure decree in which the court will determine the totality of the mortgage indebtedness and the reasonable value of the mortgaged property.

All considered, it seems to be policy of this state that mortgages do not convey title, and mortgages must be foreclosed with mortgagors afforded the protections of I.C. § 6–108. Which is not to say, however, that a junior mortgagee may be unable or elect not to pay the debts of prior mortgages. Where prior mortgages go to foreclosure and sale, the junior mortgagee who does not redeem does lose his lien, and is reduced to suing on the indebtedness. But here the junior mortgagee, EIPCA, did redeem from the purchasers at the Metro-

politan and Mutual of New York mortgage foreclosure sales, and we have for examination and decision its contention that it need not foreclose because it became the legal owner of those premises subject to its mortgage.

To my mind the answer is found in the fact that it could redeem *only* because it had the status accorded to it by its mortgage transaction with Placerton.

It would seemingly be an anomaly of the law if EIPCA, because of its mortgagee status, is allowed to redeem and at the same time is allowed to discard its mortgage on the basis that the owner's failure to redeem made it the owner of the full title, thereby eliminating any obligation to foreclose, go to sale, and acknowledge any right in the mortgagor to redeem, even though it is clearly the policy of the law in Idaho that a mortgagor shall have such right of redemption.

All considered, it seems to me that the basic redemption statutes as written long prior to the enactment of I.C. § 6–108 must be interpreted and construed with proper regard for the ameliorative purposes of that statute, thereby requiring a foreclosure of a mortgage, the ascertainment of the total indebtedness secured, and the ascertainment of the reasonable value of the property.

Undoubtedly, and as suggested above, a purchaser at the foreclosure sales of the Mutual of New York and Metropolitan, if he were not a junior mortgagee, would, absent any redemption, obtain all of the mortgagor's title free of liens subsequent to the mortgage which was foreclosed. But, then when a junior mortgagee, here EIPCA, redeems from that purchaser in order to protect the security for the debt due him, the question narrows down to whether the redeeming junior mortgagee is subrogated to the position of the purchaser from whom he redeems. The Supreme Court of Illinois addressed such a proposition in *Harper v. Sallee*, 376 Ill. 540, 34 N.E.2d 860, 135 A.L.R. 189 (1940), and as I understand the opinion in that case, it affirmed its previous holding "that a junior mortgagee who re-

deems may foreclose his second mortgage and have the land sold for the satisfaction of the mortgage debt plus his redemption money . . . ." *Id.* at 863. The court there added that, if the junior mortgagee was truly subrogated to all of the purchaser's rights, he would be entitled to a deed merely by waiting out the redemption period. "It is obvious that this is not true," said that court. *Id.*

Although in this technical field I confess that to me it is not all that obvious, the result reached in Illinois seems to me the result that should be reached here, especially in view of the applicability of I.C. §§ 6–108 and 6–101. EIPCA apparently concluded that it had a right to foreclose its junior mortgage, and in fact had commenced just such an action. Obligated to pay the prior mortgages in order to protect its security, it did so, and it should have merely amended its complaint to allege the total amounts of its mortgage indebtedness and its various redemption payments. If it contemplated seeking a deficiency judgment, I.C. § 6–108 required that it also establish to the court's satisfaction the reasonable value of the property.

If EIPCA was omitted in the actions brought to foreclose the prior mortgages, as appears to be the case, it becomes necessary to distinguish between "equity of redemption" and "statutory right of redemption." Naming a junior mortgagee as a party defendant in the foreclosure of a senior mortgage will have the effect of cutting off the junior mortgagee's equity of redemption if he does not exercise it within the time limited by the foreclosure decree.

Remaining to him, and coming into play only where he has been made a party to the foreclosure, is his statutory redemption right which is sixty days after the date of sale or after any prior redemption.

The applicable statutes in our sister state of Oregon are similar to ours. That state's high court has been called upon to decide the very question here presented:

"The defendant intimates that a lien creditor is a necessary party to a mortgage foreclosure. This is true only in a limited sense. The statute provides that any person having a lien subsequent to the plaintiff upon the same property shall be made a defendant in a suit to foreclose a mortgage. O.C.L.A. §§ 9–501, 9–502. But it is established that although junior lien claimants are necessary parties if the decree is to affect them, nevertheless the decree of foreclosure is valid as to all parties who are properly joined even though other lienors are not joined. *The omitted junior lienholder is in the same position as if no foreclosure had ever taken place, and he has the same rights, no more and no less, which he had before the foreclosure suit was commenced.* Monese v. Struve, 155 Or. 68, 62 P.2d 822; Gaines v. Childers, 38 Or. 200, 63 P. 487; Koerner v. Willamette Iron Works, 36 Or. 90, 58 P. 863; Sellwood v. Gray, 11 Or. 534, 5 P. 196. *One of the rights available to the junior lienholder is to redeem the mortgage and thus become subrogated to the position of the senior mortgagee.* Brown v. Crawford, D.C., 252 F. 248; Coughanour v. Hutchinson, 41 Or. 419, 69 P. 68. This right was therefore available to the defendant unless it was cut off by the act of the plaintiff in paying into court the amount of the judgment which was a lien on the mortgaged property. It would appear that the rights of a junior judgment lien claimant attach to him only so long as he has an unpaid judgment which alone constitutes the basis for his lien.

"Just as the omitted junior lienholder retains the rights he had in the property subject to the lien, so the senior mortgagee retains rights with respect to the junior lienholder which are the equivalent of those held by him before the foreclosure of his mortgage. The purchaser at the foreclosure sale, whether he be the mortgagee or a third party, is vested with the rights of the mortgagee as against any omitted parties in the foreclosure suit, and may proceed to cut off the junior lien by suit for strict foreclosure. By the decree the junior lienor will be required to redeem or be barred of any

rights in the property. This is the procedure sanctioned by the courts of this state. *Gaines v. Childers; Koerner v. Willamette Iron Works; Sellwood v. Gray*, all supra.

"The defendant claims that his right to redeem in this case is granted by statute and relies on O.C.L.A. § 6–1602(2), which provides that a creditor having a lien by judgment may redeem property sold subject to redemption. It is evident from defendant's argument and brief that it has confused the equitable right of redemption or equity of redemption with the statutory right of redemption. A clear distinction must be made between these two concepts.

"The difference between the equity of redemption and statutory redemption has been made clear by the decisions of this court. *Higgs v. McDuffie*, 81 Or. 256, 157 P. 794, 158 P. 953; and *Sellwood v. Gray*, supra. The classic statement is that of Mr. Justice Lord in *Sellwood v. Gray* [11 Or. 534, 5 P. 198]. We quote:

"'* * * His equity of redemption is the right to redeem from the mortgage—to pay off the mortgage debt—until this right is barred by a decree of foreclosure; but until this right is barred, his estate, in law or in equity, is just the same after as it was before default. It is a right, though, of which the law takes no cognizance, and is enforceable only in equity, and has nothing to do with our statute of redemptions. [Citing cases.] This is a valuable right, and exists not only in the mortgagor himself, but in every other person who has an interest in, or legal or equitable lien upon, the mortgaged premises, and includes judgment creditors, all of whom may insist upon a redemption of the mortgage. [Citing authorities.] Nor can one against his consent be deprived of this right without due process of law. To bar his right of redemption he must be made a party to the foreclosure, or the proceeding as to him will be a nullity. * * *'

"The exercise of the equitable right of redemption has the effect of discharging the lien if the redemption is by the mortgagor or his successor in interest, *but if a junior lien claimant redeems, the effect is to substitute the junior for the senior lienholder.* In the latter case, the aggregate of the liens will be unchanged, but the persons holding the liens will be different. *A junior lien, and the right of redemption which is an incident thereof, will remain in existence unless and until the same is foreclosed by a senior lienholder.* When the junior lien is foreclosed, then the statutory right of redemption as to junior lien creditors given by O.C.L.A. § 6–1602(2) comes into existence. *If there has never been a foreclosure of the junior lien, then there is no statutory right of redemption, only the equitable right of redemption.* Concerning the rights of an omitted junior lienholder, a learned author states:

"'* * * This man's rights remain as they were, because the foreclosure does not bind him; and so, as a participant in the equity of redemption which, as to him, was never foreclosed, he can redeem in equity. That, indeed, is not only his proper course, but it is the only procedure that should be open to him. He cannot resort to statutory redemption, because he is not within the terms of the statute. The latter comes into effect at and with foreclosure, as we have seen, but the statute envisages those only whom the foreclosure has barred. It follows that one who has never been foreclosed cannot resort to statutory redemption. His remedy remains where it always was, regardless of whether the particular State had provided for statutory redemption. The remedy is redemption in equity after the ancient mode.' 2 Glenn on Mortgages, § 238.

"It is apparent, therefore, that the defendant cannot rely on the statutory provisions as a basis for his claim of an absolute right to redeem. The obvious purpose of the statutory right of redemption is to give an additional opportunity

to the mortgagor to recover his land and to the subsequent lien creditors to protect their interest. But, as has been indicated, the defendant herein can protect his interests without resort to the statutory right of redemption, and we therefore hold that the defendant does not come within the provisions of O.C.L.A. § 6–1602(2). The provisions of O.C.L.A. § 6–1603 limiting the right of a lien creditor to redeem to the period of 60 days from date of sale clearly indicates that the statutory right of redemption does not apply in cases such as the one at bar. It was provided in the interlocutory decree that the defendant 'shall have a period of sixty days from the date of this decree within which to redeem in the manner and mode provided by the statutes of the State of Oregon for redemption by a lien creditor from an execution sale of real property * * *.' The quoted provision did not constitute a holding that the defendant had a statutory right of redemption. The decree only adopted the procedure of statutory redemption as that which should be followed by the defendant if it should choose to redeem.

"*The junior lienor, who was omitted in the foreclosure of the senior mortgage, still has the valuable right of redemption available to him, but, when such a right is exercised, the authorities are clear that the redeeming junior lienholder is not entitled to a conveyance of the property, but rather to an assignment of the security interest of the senior mortgage. Renard v. Brown*, 7 Neb. 449; *Smith v. Shay*, 62 Iowa 119, 17 N.W. 444; *O'Brien v. Perkins*, Tex.Civ.App., 276 S.W. 308; *Shelton v. O'Brien*, Tex.Com.App., 285 S.W. 260. This rule is stated in 2 Jones, Mortgages, 8th ed., § 1376, as follows:

"'A junior incumbrancer who, not having been made a party to a foreclosure of a prior mortgage, afterward redeems, redeems not the premises, strictly speaking, but the prior incumbrance; and he is entitled, not to a conveyance of the premises, but to an assignment of the security. Therefore if the prior mortgagee in such case has become the purchaser at the foreclosure sale, and has thus acquired the equity of redemption of the mortgaged premises, the junior mortgagee upon redeeming is not entitled to a conveyance of the estate, but to an assignment of the prior mortgage; whereupon the prior mortgagee, as owner of the equity of redemption, may, if he choose, pay the amount due upon the junior mortgage, redeeming that. * * *'

"*When a junior lienholder has redeemed the senior incumbrance and steps into the shoes of the prior mortgagee, he must foreclose his lien and have the property sold, in order to realize on his security, unless the purchaser at the prior foreclosure, who has acquired the mortgagor's equity of redemption, chooses to redeem from him.* The equity of redemption acquired by the purchaser at the foreclosure sale, when perfected by delivery of a sheriff's deed, constitutes the basis of his right to re-redeem from a junior lienholder who by redemption from the purchaser has acquired the rights of the senior mortgagee but has not acquired the property. We quote:

"'Redemption by a junior lienor, however, means a correlative privilege on the part of the senior whose mortgage has gone through foreclosure. The junior lien, in the beginning, was subject to redemption on the part of the mortgagor. The latter, of course, lost all of his rights and interest when the decree of foreclosure was entered against him. But let us remember that the junior's security consisted only if the equity of redemption, or a share in it. *Hence if he redeems after a foreclosure from which he has been omitted, he is not redeeming the premises as the mortgagor would have done, but is merely acquiring the senior mortgage for the protection of his own interest.* It follows that he can be met at the gate by the purchaser at the sale, whether he be the senior mortgagee or

a third party, with a tender of money in payment of his debt with interest. In other words, the purchaser at the sale can dispose of the junior mortgagee by redeeming the land from his lien.' 1 Glenn, Mortgages, § 86.5." (Emphasis added.)

*Portland Mortgage Co. v. Creditors Protective Ass'n.*, 199 Or. 432, 262 P.2d 918, 922–924 (Or.1953).

SHEPARD, Justice, specially concurring.

I agree with the majority opinion, excepting only that portion relating to the effect of a junior lienor's redemptions and purchases upon the unpaid indebtedness.

My first difficulty with the majority opinion is its analysis of the case law and statutes regarding "foreclosure" and its applicability to EIPCA. While EIPCA initially sought foreclosure, the actual trial was held and the matter litigated upon EIPCA's theory of action on the debt and Placerton's various defenses thereto and its counterclaim.

The trial court held that since EIPCA had acquired all title to the property the matter of foreclosure was moot. In my view, the trial court was eminently correct in so ruling. Inferentially at least, the majority reverses that holding of the trial court by stating that there must be determined "the fair market value of the mortgaged property before a *deficiency judgment* can be awarded." That statement is of no assistance. A *deficiency* judgment can only result where there has been a foreclosure and sale and the proceeds are not sufficient to satisfy the underlying debt. Hence, the majority has suddenly converted this action on the debt into one for a deficiency and has required the trial court to enter a "deficiency judgment."

It is axiomatic, to me at least, that when various estates in real property, either equitable or legal, come into the hands of one person they merge in that person and all the lesser estates are extinguished. When EIPCA redeemed and purchased at sale and Placerton and Beeler failed to redeem (all of which is admitted), EIPCA, in my opinion, acquired all of Placerton's interest and

title to the property. If that be so, then EIPCA held complete title, there was no estate or interest remaining in Placerton to be foreclosed and the trial court was correct in its ruling of mootness. Assuming the above analysis is correct, the debt was not then at least within the purview of I.C. § 6–101 as an action "for the recovery of any debt *secured by a mortgage on real property.*"

Further, I find it difficult to ascertain any applicability of I.C. § 6–108 which prohibits the entry of a *deficiency judgment* absent a showing of "the reasonable value of the mortgaged property * * * in any case involving a foreclosure of a mortgage." Here, except for the assertion of the majority, there was no deficiency sought by EIPCA. There could be no "foreclosure" of a non-existent estate or interest in Placerton and absent a foreclosure there could be no "deficiency."

The majority opinion in a case of first impression in Idaho cites cases of ancient vintage from other jurisdictions. For its rationale, the majority states: "The reason underlying this rule is that the mortgagee, *having appropriated the security in satisfaction of the debt*, must fully exhaust such security before proceeding against the debtor for a *deficiency* judgment." I submit that such rationale is mere bootstrapping. There is no indication in the record here that EIPCA "appropriated the security in satisfaction of the debt." Rather, the record is clear that EIPCA acquired the remnants of any title or estate Placerton may have had by Sheriff's certificates of sale for which EIPCA paid almost $3,000,000.00.

The Idaho cases cited by the majority simply do not support its position. *Jeppesen v. Rexburg State Bank*, 57 Idaho 94, 62 P.2d 1369 (1936), involved the "indorser" of notes asserting that since the maker of the notes secured them by a mortgage, the creditor was required to foreclose the mortgages before proceeding against the endorser. The court there held against the endorser and for the creditor. If anything, the case would support the action of EIPCA

against defendant Beeler on his guarantee of the indebtedness to the amount of $7,000,000.00.

As to *Barnes v. Buffalo Pitts Co.*, 6 Idaho 519, 57 P. 267 (1899), the court stated: "The only matter before us for review on this appeal is the action of the district court in overruling defendant's motion for judgment against the sureties on the undertaking on appeal." *Id.* at 520–21, 57 P. at 267. There a judgment of foreclosure had been entered.

Appellants assert and the majority opinion agrees "that it would be totally inequitable for EIPCA to have the property [for which they paid the Sheriff], title to which they acquired by reason of their status as a junior encumbrancer, and still obtain a judgment against appellants for the full amount of the indebtedness without any credit against the indebtedness." In support thereof the majority cites *Boesiger v. Freer*, 85 Idaho 551, 381 P.2d 802 (1963), and *Fogelstrom v. Murphy*, 70 Idaho 488, 222 P.2d 1080 (1950). I find nothing in *Fogelstrom* of any assistance to our present conceptual difficulties other than there plaintiff sought and obtained foreclosure of mortgages, which was affirmed on appeal. *Boesiger* involved the enforcement of an oral contract to convey real property because equitable estoppel operated against the vendor.

Rather than the approach of the majority, I would consider the instant case based on the assertions of the parties at trial. As I understand the position of appellants in their supplemental counterclaim, it was alleged that EIPCA had been unjustly enriched by reason of the entire transaction and at the expense of the appellants, or in the alternative, as a defense to EIPCA's suit on the debt appellants sought credit on the debt as determined by a computation of the fair market value of the property less the amounts expended by EIPCA to acquire its title.

If, as I presume, appellants had the burden of proof on such counterclaim and if they successfully carried that burden by proof of the value of the property, then I would reverse with directions to the trial court to enter findings thereon and thereafter a judgment reflecting the inherent equitable authority of the court to relieve a party who has suffered at the hands of another party who has been unjustly enriched. If appellant did not successfully carry that burden of proof and the trial court so concludes, then I would affirm.